### STATE v. LAWRENCE PRESSLEY.

(Filed 9 March 1966.)

**1. Criminal Law § 71—**

Notwithstanding there is no evidence tending to vitiate a confession at the time it is admitted in evidence, if its involuntariness becomes apparent thereafter from testimony of a State's witness, it should be stricken on motion.

**2. Same—**

Where it appears that prior voluntary statements made by defendant have thoroughly implicated him in the commission of crime and caused the filing of charges, the fact that a later statement, not necessary to complete the prior confession, may have been induced by the promise of leniency if the goods stolen were recovered, does not vitiate the prior confession, the stolen goods not having been recovered or introduced in evidence.

MOORE, J., not sitting.

APPEAL by defendant from *Campbell, J.,* October 1965 Session of TRANSYLVANIA.

Defendant was put to trial upon a bill of indictment charging him and three others with breaking and entering the building occupied by the V. F. W. Club, Inc. and with the larceny of specified property valued at more than $200.00.

The only evidence was that offered by the State. It tended to show: The premises of the V. F. W. Club, a corporation, are located about one mile south of Brevard. On the morning of July 26, 1965, employees discovered that the lock on the front door of the Club building had been pried from the brown metal door facing and

that two slot machines, worth $750-$1,000 and containing about $70 in coins; 25 pints of whiskey; 7 cases of beer; and $45-$50 in bills had been taken away. To connect defendant with the theft, the State relied upon his statements to Deputy Sheriff Edwin Owen. When these statements were offered in evidence, defendant objected to the admission of "any purported confession." Whereupon, the judge conducted an examination in the absence of the jury to determine the admissibility of the proffered statements.

According to the evidence adduced upon *voir dire*, Owen and Bud Sitton, another deputy sheriff of Transylvania County, went to Georgia in response to a call from Sheriff Burke of Lyons, Georgia. There, defendant, Red Lance, Steve Lance, and Frank Barton (the four persons named in the bill of indictment) were in jail. Before the North Carolina officers arrived, defendant had made a statement to Sheriff Burke implicating himself in the V. F. W. Club larceny. After the arrival of the Transylvania officers, defendant made a full confession to them of his complicity in the crime. Defendant was informed of his right to counsel, but he refused the services of an attorney. His confession was not induced by any threats or promises; it was freely and voluntarily made. He waived extradition and, upon his return to North Carolina, he signed a written confession.

On the *voir dire*, counsel for defendant cross-examined the State's witness but declined the opportunity to offer any evidence bearing upon the voluntariness of defendant's alleged confession. Upon the testimony before him, the judge found that the statements which defendant had made to Owen, both in Georgia and in North Carolina, were freely and voluntarily made after he had been informed of his constitutional rights. No objection or exception was entered to this finding.

The jury was then recalled and Owen testified that, in the absence of his three companions, defendant made the following statement in the presence of Sheriff Burke, Deputy Sheriff Sitton, and himself: On the night of July 25, 1965, defendant and the other three men named in the bill of indictment were riding around in his automobile, drinking "white whiskey." The two Lance men requested that defendant drive them to Florida. He refused because he had no money, but when they offered to furnish gas, oil, and liquor, he consented. The four then drove to the vicinity of the V. F. W. Club. Defendant and Red Lance remained in the car while Steve Lance and Frank Barton made two trips to the Club. On their first return, they brought back beer; on the second, two slot machines from which they obtained $73.00 in coins. Next, defendant drove to Barkley Bridge where Barton and Steve Lance took the slot machines

from the automobile and went toward the river, stating that no one would ever again see the machines. The men then drove to Lyons, Georgia, where Sheriff Burke arrested them. At that time, they had 7 cases of beer, 22-25 pints of whiskey, and $53.00 in silver. All of this property had been taken from the V. F. W. Club in Brevard. In defendant's automobile, the officers also found a hammer and a small crowbar which "had the same color of paint that was on the V. F. W. Club door," but "the paint was never tested."

Steve Lance, Frank Barton, and Red Lance returned to North Carolina with the officers. Defendant told the officers that if they would permit him to drive his own car (which was then stored) back to North Carolina, he would show them where the slot machines were. Defendant was permitted to drive his car back. Upon his return, he took the officers to the river, but the slot machines were never found.

On cross-examination, counsel for defendant asked Owen if, either in Georgia or Brevard, he had told defendant that it "would go easier with him if he would turn State's evidence and sign a statement." The officer's reply was: "I told him if he would tell me where the goods was at and I got the stuff back, it would go easier on him, yes sir." When Deputy Sheriff Owen made this statement, there was no motion to withdraw the alleged confession from the consideration of the jury. With the completion of Owen's testimony the State rested its case, and defendant moved for a nonsuit. The motion was overruled, and defendant also rested. Because of a defect appearing upon the face of the bill of indictment, the court of its own motion quashed the count charging breaking and entering and submitted the case to the jury only upon the count charging larceny. The jury returned a verdict of guilty of larceny of property of a value of more than $200.00. From a sentence of imprisonment, defendant appeals.

*T. W. Bruton, Attorney General, Millard R. Rich, Jr., Assistant Attorney General for the State.*
*Hamlin, Ramsey & Monday for defendant appellant.*

SHARP, J. The preceding factual statement reveals evidence plenary to overrule defendant's motion of nonsuit. His other assignments of error are either unsupported by exceptions in the record or otherwise fail to comply with the rules of this Court. Defendant says in his brief that after the court had held his confession to be admissible in evidence, he deemed any further objection to it futile. Nevertheless, his first assignment of error is that the judge erred in admitting his alleged confession.

Where the voluntariness of a confession is challenged, this Court has not been inclined to dispose of the question on procedural grounds. *State v. Anderson,* 208 N.C. 771, 182 S.E. 643. The general rule is that, "the admissibility of a confession is to be determined by the facts appearing in evidence when it is received or rejected, and not by the facts appearing in evidence at a later stage of the trial. *S. v. Richardson,* 216 N.C. 304, 4 S.E. 2d 852; *S. v. Alston, supra* (215 N.C. 713, 3 S.E. 2d 11)." *State v. Rogers,* 233 N.C. 390, 396, 64 S.E. 2d 572, 576-77. Therefore, if a defendant has evidence tending to show that his confession was involuntary, it behooves him to produce it upon the *voir dire. State v. Alston, supra.* To the rule as stated in *State v. Rogers, supra,* there is an exception: When, after the alleged confession has been received in evidence, its involuntariness becomes apparent from the testimony of a *State's witness,* it should be stricken *upon motion. State v. Anderson, supra.* In *State v. Thompson,* 224 N.C. 661, 664, 32 S.E. 2d 24, 26, Denny, J. (later C.J.), said: "The defendants objected to the admission of the confessions, but declined the offer of the trial judge to have their voluntariness determined in the absence of the jury. The objection to the admission of these confessions comes too late unless their involuntariness appears from the State's evidence." Similar statements appear in *State v. Richardson, supra,* and in *State v. Alston, supra,* cases not coming within the exception.

We do not think, however, that the evidence would bring this case within the exception to the rule enunciated in *State v. Anderson, supra,* even if defendant had moved to strike the confession at the conclusion of Owen's testimony. So far as the record discloses, the Transylvania officers had not suspected defendant of participation in the larceny charged until after they received the call from Sheriff Burke. Defendant makes no contention that his statement to Sheriff Burke, made before the North Carolina officers arrived, was involuntary or that the Georgia officer offered him any inducement to confess a crime committed outside his jurisdiction. The evidence engenders the logical deduction that defendant had fully implicated himself in the V. F. W. Club larceny by his statements to Deputy Sheriffs Owen and Sitton, in Sheriff Burke's presence, *before* Owen told defendant he could make it easier on himself by telling them where the slot machines were. The confession, therefore, was not in consequence of this suggestion of leniency; the suggestion itself shows that the officers already had the confession. The purpose of the promise of leniency was to retrieve property which defendant had previously admitted stealing. A promise of leniency renders a confession involuntary only if the confession is so connected with the inducement as to be the consequence of it. 23 C.J.S.,

Criminal Law § 825 (1961); 20 Am. Jur., Evidence § 497 (1939).

Defendant made the proposition that he would take the officers to the "goods" if he were permitted to drive his car back. The officers kept their part of the bargain; the defendant was either unable or unwilling to keep his. The record does not disclose whether it was in North Carolina or in Georgia that Owen told defendant it would be easier on him if they "got the stuff back." Neither the State nor defendant saw fit to clarify the time and place at which the statement was made, but—whether it was made in Georgia or in North Carolina—, the officers wrung nothing whatever from defendant by this "inducement." Had defendant led them to the slot machines after Owen made this representation to him, he might have argued with more logic that the *machines* were thereby rendered inadmissible in evidence. Since, however, they were not found, it does not appear that Owen's unauthorized offer of leniency could have prejudiced defendant in any way.

The record discloses no oppression of defendant and no violation of his constitutional rights. He was represented by counsel of his own choosing and convicted after a fair trial.

No error.

MOORE, J., not sitting.