STATE OF NORTH CAROLINA v. WILLETTE SMITH

No. 7026SC244

(Filed 24 June 1970)

Criminal Law § 76— admissibility of confession — inducement by promise not to indict defendant on another charge

In this prosecution for attempted armed robbery, finding by the trial court that a written waiver of right to remain silent and to counsel at a police interrogation and a written confession executed by defendant were freely and voluntarily given was not supported by the voir dire evidence, and the waiver and confession were improperly admitted in evidence, where defendant testified on voir dire that she executed the documents only after a police officer showed her an article which he claimed was marijuana and which he said was found in defendant's pocketbook, and that the police told her that she would not be charged with possession of marijuana if she signed the waiver and confession, the State's only evidence to contradict defendant's testimony was of a negative character, and the State's evidence showed that the matter of marijuana came up

in defendant's presence before she signed the documents and that one officer made statements to defendant of such nature as to offer defendant a hope that she would not be prosecuted for possession of marijuana if she signed the waiver and confession.

APPEAL by defendant from *Snepp, J.*, 17 November 1969 Schedule "B" Criminal Session, MECKLENBURG Superior Court.

By bill of indictment proper in form, defendant was charged with attempted armed robbery on 20 May 1969. She pleaded not guilty, the jury returned a verdict of guilty as charged, and the court rendered judgment that defendant be placed in the custody of the Department of Corrections as a "Committed Youthful Offender" for not more than ten years pursuant to the provisions of Article 3A, Chapter 148 of the General Statutes of North Carolina. Defendant appealed.

*Attorney General Robert Morgan and Staff Attorney Roy A. Giles, Jr., for the State.*

*Charles V. Bell for defendant appellant.*

BRITT, J.

The sole question presented by this appeal relates to the admissibility into evidence of a written "waiver of right to remain silent and right to counsel during the interview" and a written confession executed by the defendant. She contends that soon after her arrest and while she was in custody of police, a police officer showed her an article which he claimed was marijuana and which he said he found in her pocketbook; that the police told her if she would sign the waiver and confession she would not be indicted for possession of marijuana; that her execution of said documents was induced by hope or extorted by fear, rendering them involuntary and inadmissible.

Before the documents were admitted in evidence, the trial judge conducted a voir dire in the absence of the jury at which three police officers and the defendant testified. Thereafter, the trial judge found as a fact that the waiver was intelligently and voluntarily executed by defendant and that the confession was not obtained by threat or promise; the court concluded as a matter of law that the confession was made by defendant after having been fully advised of her constitutional rights and was made voluntarily and intelligently, without any promise of leniency, coercion or duress. The State contends that the trial judge's findings of fact are fully sup-

ported by the evidence presented at the voir dire and the findings of fact fully support his conclusions of law.

In *State v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620 (1965), our Supreme Court held a defendant's confession involuntary and ordered a new trial. We quote from the opinion by Parker, J. (later C.J.), at pages 410-411:

"In addition to the undisputed facts, we have this evidence: Defendant testified on the preliminary hearing that a deputy sheriff told him they had two armed robbery charges against him, and they could also bring a charge of kidnapping Riggins against him, that kidnapping carried a life sentence, and that if he would cooperate and sign a confession that he had participated in the two armed robberies, they would drop the kidnapping charge and do their best to prevent an indictment for kidnapping. That two or three days later he made the confession to two police officers of Laurinburg that the State introduced in evidence against him. That his confession was false and he made it because he was afraid he would be indicted for kidnapping. J. B. Odom, a police officer of Laurinburg testified for the State: 'I won't say that the word kidnapping was not mentioned, but it was never mentioned by me.' Two deputy sheriffs talked to defendant, one of whom was dead when the instant case was tried. The other testified kidnapping was not mentioned in his presence. The State's evidence in respect to whether or not kidnapping was mentioned to defendant is entirely of a negative character, and does not amount to a complete negation of defendant's testimony in respect to what a deputy sheriff said to him about kidnapping.

It seems obvious from the totality of circumstances surrounding the making of the confession, particularly the testimony of defendant that his confession was induced by what a deputy sheriff said to him about kidnapping, which carried a life sentence, and the negative and unsatisfactory evidence of the State in reply thereto, that defendant's confession was extorted by fear and was not voluntary on his part, and that its admission in evidence was in violation of principles of law clearly stated as early as 1827 in *S. v. Roberts*, 12 N.C. 259, and continuously repeated in decisions of this Court since, deprived him of that fundamental fairness essential to the very concept of justice, and denied him due process of law guaranteed by the 14th Amendment. * * *"

In *State v. Fuqua*, 269 N.C. 223, 152 S.E. 2d 68 (1967), the court

STATE *v.* SMITH

declared a confession involuntary and awarded a new trial. We quote from that opinion by Branch, J., at page 228:

"In the instant case the police officer while questioning the defendant, then in jail custody, said to defendant: 'That if he wanted to talk to me then I would be able to testify that he talked to me and was cooperative.' This statement by a person in authority was a promise which gave defendant a hope for lighter punishment. It was made by the officer before the defendant made his confession, and the officer's statement was one from which defendant could gather some hope of benefit by confessing. The total circumstances surrounding the defendant's confession impels the conclusion that there was aroused in him an 'emotion of hope' so as to render the confession involuntary."

In *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968), in an opinion by Sharp, J., it is said at page 292:

"It has been the law of this State from its beginning that an extrajudicial confession of guilt by an accused is admissible against him only when it is voluntary. *State v. Vickers*, 274 N.C. 311, ...... S.E. 2d ......; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1; *State v. Warren*, 235 N.C. 117, 68 S.E. 2d 779; *State v. Roberts*, 12 N.C. 259. When an investigating officer 'offers some suggestion of hope or fear . . . to one suspected of crime and thereby induces a statement in the nature of a confession, the decisions are at one in adjudging such statement to be involuntary in law, and hence incompetent as evidence. . . .' (Citations omitted.) *State v. Biggs*, 224 N.C. 23, 26-27, 29 S.E. 2d 121, 123. Whether conduct on the part of investigating officers amounts to a threat or promise which will render a subsequent confession involuntary and incompetent is a question of law, and the decision of the trial judge is reviewable upon appeal. *State v. Biggs, supra.*"

A review of the evidence elicited at the voir dire in the instant case discloses:

Defendant's pertinent testimony is summarized as follows: "In a way" she was forced to sign the paperwriting (confession). The officers showed her something in a container which they said they obtained from her pocketbook and which they said was marijuana. The officers told her if she would sign the paper which they had prepared that they would throw the marijuana away and that is the reason she signed it. She has heard nothing more about the

marijuana and the part of the paperwriting connecting her in any way with robbing a cab driver is not true. She did not have any marijuana in her pocketbook.

Pertinent testimony of Officer Fesperman is summarized as follows: The matter of marijuana came up in defendant's presence before she signed the statement. Officer Crenshaw could have talked to her about the marijuana. Officer Sloop did talk to her about it; he had the marijuana in his hands and told her it looked like marijuana. "I did not hear him say that they wouldn't prefer any charges against her about the marijuana. * * * I did not tell Willette Smith that no case or charges would be preferred against her if she would sign this statement. Officer Sloop came in and said the cigarette looked like marijuana, and when we finished interrogating her to bring her to the vice squad, that they would indict her for it, and she asked me, she said, 'Is he going to sign a warrant against me for this stuff here?' I said, 'He is not running this case or this investigation.' I said, 'Mr. Crenshaw and myself is running it and if I want to charge you with it, I will, and he's got nothing to do with it.' I said, 'Now, you tell me about the robbery,' and which she did." He never told her that if she signed the statement that she would not be indicted for the possession of marijuana; he did not promise her anything.

Pertinent testimony by Officer Crenshaw is summarized as follows: He did not hear any conversation between defendant and Officer Sloop before she signed any waiver or confession. It is possible that Officer Sloop did talk with her because there were a couple of rooms in which the police receive telephone calls and Crenshaw was in and out of the room. He did not hear anyone say that marijuana was found in defendant's pocketbook and if she would sign the paperwriting and the waiver nothing would be done about the marijuana.

Officer Sloop did not testify on voir dire; neither did Officer McCullough who, according to the evidence, was present when the subject of marijuana was discussed.

As was the case in *State v. Chamberlain, supra,* it appears to us that "the totality of circumstances surrounding the making of the confession," particularly the testimony of defendant that her confession was induced by what the officers said to her regarding her being prosecuted for possession of marijuana, and "the negative and unsatisfactory evidence of the State in reply thereto," that defendant's confession was extorted by fear and was not voluntary on her part. It would also appear that what Officer Fesperman told

SNEAD *v.* MILLS, INC.

defendant (quoted above) was more calculated to arouse in defendant an "emotion of hope" so as to render the confession involuntary than was true in *State v. Fuqua, supra.*

The uncontradicted evidence discloses that the waiver and confession of defendant were not freely and voluntarily given within the meaning of the decisions of our Supreme Court and are incompetent as a matter of law. Their admission in evidence against defendant constituted prejudicial error which entitles her to a

New trial.

BROCK and HEDRICK, JJ., concur.