STATE OF NORTH CAROLINA v. FREDERICK WAYNE THOMAS

No. 308A83

(Filed 6 March 1984)

1. **Criminal Law § 34.5— evidence of another offense—properly admitted to show identity of defendant**

    In a prosecution for a first-degree sexual offense in violation of G.S. 14-27.4, the trial court did not err in admitting the testimony of a witness which tended to show the defendant's commission of a separate offense since (1) defendant relied upon a defense of alibi, thus putting his identity in issue, and (2) the two offenses were sufficiently similar as to "provide a reasonable inference that the same person committed both offenses." In both cases, the victim was a young boy traveling alone and on foot; in both cases the assault took place during non-daylight hours; the assailant in each case first casually greeted his victim prior to forcing himself upon the victim; both attacks took place on a grassy bank; and during the course of both attacks, the assailant said to each victim something to the effect of "be quiet and I won't hurt you"; the prosecuting witness described his assailant as a "jogger" and the other witness testified that he heard defendant "jogging up behind him"; the attack on the prosecuting witness was decidedly sexual in nature, and given the other witness's testimony that defendant was trying to pull his pants off, there was at least a reasonable inference that, had the other witness not fought back, the encounter would have culminated in a sexual assault.

2. **Constitutional Law § 46— denial of motion to withdraw as counsel—failure to demonstrate prejudice**

    Defendant failed to demonstrate that the denial of defense counsel's motion to withdraw, on the grounds that he had represented one of the State's potential witnesses in an unrelated matter and that he had advised the potential witness's mother concerning the incident about which he was to testify at trial, resulted in prejudice to him.

3. **Criminal Law § 75.11— confession—invoking right to counsel—subsequent waiver initiated by defendant**

    In a prosecution for a first-degree sexual offense where defendant was questioned, invoked his right to counsel, questioning ceased, and as an officer filled out a warrant for defendant's arrest, the officer remarked to the defendant that he should be sure and tell his attorney he had a chance to help himself and did not do so, such a remark did not amount to interrogation of defendant making defendant's subsequent confession in violation of his Sixth Amendment right to counsel. Five minutes passed before defendant subsequently inquired of the officers as to whether they still wanted him to make a statement at which point the officer replied that it was up to the defendant, and the defendant at that point stated that he would like to give one.

**4. Criminal Law § 75.2— finding defendant's confession free and voluntary proper.**

The trial court did not err in finding defendant's statement to be voluntary and admissible rather than having been induced by the suggestion of hope or fear implanted in his mind by a statement by an officer that defendant be sure and tell his attorney that he had a chance to help himself but failed to do so.

Justice EXUM dissenting.

ON appeal by defendant from the judgment of *Albright, Judge,* entered at the 16 February 1983 Session of FORSYTH County Superior Court.

Defendant was charged in an indictment, proper in form, with the commission of a first-degree sexual offense in violation of G.S. 14-27.4. He entered a plea of not guilty.

At trial, evidence for the State tended to show:

On 26 May 1982 at approximately 5:30 a.m., Marc Pruitt, aged ten, was delivering papers on his paper route in the Ardmore section of Winston-Salem when a jogger approached him. The jogger, later identified as defendant, at first greeted Pruitt, but then took his towel and put it over Pruitt's mouth. Defendant warned Pruitt not to say anything. He then spread the towel down on a grassy bank and made the boy lie down. Defendant pulled down Pruitt's pants and performed fellatio on him. Defendant made him turn over so that he could lick his buttocks. After a short while, defendant had the boy stand. Defendant said, "Thank you. You don't know how much this has helped me." Defendant then jogged off up the street.

Pruitt reported the incident to his parents who in turn called the police. Pruitt was shown approximately two hundred photographs but could not pick out his assailant as being among them. Subsequently, on 6 August 1982, he was shown six pictures from which he selected defendant's picture.

The State also offered into evidence, over defendant's objection, the testimony of Jerry Makas that he had been assaulted by the defendant on 4 August 1982. When that incident occurred, Makas was fourteen years old. Upon defendant's arrest for the Makas incident, police officers questioned him concerning the Pruitt assault. During the course of that questioning, defendant

gave an inculpatory statement to the officers, which was also offered into evidence at trial.

Defendant elected not to testify, but presented other witnesses whose testimony tended to show that he was at home at the time of the Pruitt assault.

The jury returned a verdict of guilty and defendant was sentenced to life imprisonment. He appealed to this Court as a matter of right pursuant to G.S. 7A-27.

*Rufus L. Edmisten, Attorney General, by Daniel C. Oakley, Special Deputy Attorney General, for the State.*

*William L. Cofer, for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant first assigns as error the admission into evidence of the testimony of Jerry Makas tending to show the defendant's commission of a separate offense. Jerry Makas, testifying on behalf of the State, was permitted to relate an encounter between the defendant and him on 4 August 1982, just over two months after the alleged assault on Marc Pruitt. According to Makas, he was walking to a convenience store on Country Club Road at about 11:15 p.m. when he first saw defendant. Defendant was in a van and drove past Makas several times. Defendant parked the van in front of the convenience store and he and Makas nodded to each other as Makas entered the store. After making his purchase Makas walked back down the hill on Country Club Road. According to Makas, he then heard defendant "jogging up behind [him]." Defendant said, "That's a good way to break your ankle," referring to Makas' walking along the curb. They continued walking until they reached the "bottom of Country Club where the creek is." Makas' account of the ensuing assault was as follows:

> A. . . . he grabbed me and had his hands on my pants, and I grabbed his arms and started kicking him and said, "Let me go," about three or four times. And he said, "All right. You go this way and I'll go that way."

At trial, Makas was shown some pictures depicting his physical condition just after the assault. After he identified the pictures, he was asked how the scratches that appeared on his buttocks

were caused. He responded: "He was trying to get my pants down . . . ." Makas also testified that, during the struggle, defendant said to him: " 'Be quiet. Stay still, and I won't hurt you.' " Makas testified that defendant did not strike him or try to hit him in any way. He testified that, other than scratching his buttocks and pulling him down the hill, the defendant "was just trying to pull [his] pants down."

Defendant contends that the admission of this evidence was error under our well-settled rule that evidence of the commission of another, distinct crime is generally not admissible in a criminal trial. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). "This is true even though the other offense is of the same nature as the crime charged." *State v. McClain,* 240 N.C. at 173, 81 S.E. 2d at 365. The rule, as we recognized it in *State v. McClain,* is based on the following cogent reasons:

> (1) "Logically, the commission of an independent offense is not proof in itself of the commission of another crime." *Shaffner v. Commonwealth,* 72 Pa. 60, 13 Am. R. 649; *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. (2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. *State v. Simborski,* 120 Conn. 624, 182 A. 221; *State v. Barton,* 198 Wash. 268, 88 P. 2d 385. (3) "Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence." *State v. Gregory,* 191 S.C. 212, 4 S.E. 2d 1. (4) "Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial." 20 Am. Jur., Evidence,

section 309. See, also, in this connection these North Carolina cases: *S. v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853; *S. v. Beam*, 184 N.C. 730, 115 S.E. 176; *S. v. Fowler*, 172 N.C. 905, 90 S.E. 408.

*Id.* at 173-74, 81 S.E. 2d at 365-66.

There are, however, several exceptions to the general rule, and one of them, the one relied upon by the State in the instant case, permits evidence of other crimes to be admitted when relevant to identify defendant as "the perpetrator of the crime charged." *Id.* at 175, 81 S.E. 2d at 367. As stated in *McClain*:

Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged.

*Id.* at 175, 81 S.E. 2d at 367.

Notably, before evidence of other distinct crimes may be admitted under the exception, two requirements must be met. First, the identity of the defendant must be an issue in the case. Thus, when the defendant relies upon the defense of alibi, his identity and presence at the scene of the crime are facts which, along with other elements of the crime, must be proved by the State beyond a reasonable doubt. However, the mere fact that defendant committed another crime, even a similar one, does not *ipso facto* tend to identify him as the perpetrator of the crime charged. The second prong of the exception therefore requires that the circumstances of the two crimes be such as to "tend to show that the crime charged and another offense were committed by the same person." *State v. McClain*, 240 N.C. at 175, 81 S.E. 2d at 367 (1983). As stated by Justice Mitchell in the recent case of *State v. Moore*:

[B]efore this exception can be applied, there must be shown some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes. [Citations omitted.] To allow the admission of evidence of other crimes without such a showing of

similarities would defeat the purpose of the general rule of exclusion.

309 N.C. 102, 106-107, 305 S.E. 2d 542, 545 (1983).

In the instant case, defendant relied upon a defense of alibi, thus putting his identity in issue. *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981). The first test having been met, then, the only question remaining is whether the circumstances of the two offenses were so similar as to "tend to show that the crime charged and another offense were committed by the same person." *State v. McClain*, 240 N.C. at 175, 81 S.E. 2d at 367; *State v. Moore*, 309 N.C. at 106, 305 S.E. 2d at 545.

We find that the two offenses in the instant case are sufficiently similar as to "provide a reasonable inference that the same person committed both offenses." *State v. Moore*, 309 N.C. at 108, 305 S.E. 2d at 546. In both cases, the victim was a young boy travelling alone and on foot. In both cases the assault took place during non-daylight hours. The assailant in each case first casually greeted his victim prior to forcing himself upon the victim. Both attacks took place on a grassy bank; and during the course of both attacks, the assailant said to each victim something to the effect of "Be quiet and I won't hurt you." Marc Pruitt described his assailant as a "jogger." Jerry Makas testified that he heard defendant "jogging up behind him." The attack on Pruitt was decidedly sexual in nature, and, given Makas' testimony that defendant was trying to pull his pants off, there is at least a reasonable inference that, had Makas not fought back, the encounter would have culminated in a sexual assault. In both cases, the assailant did not attempt to hit or strike his victim; and in both cases, the assailant left his victim by running "back up" the street.

In the light of the numerous similarities between these two offenses, we hold that the trial court did not err in admitting the testimony of Jerry Makas concerning defendant's assault upon him. *See State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981); *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978); *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972). *Cf. State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542. This assignment is overruled.

[2] Defendant's second assignment of error challenges the trial court's denial of defense counsel's motion to withdraw. The attorney for defendant moved to withdraw on the grounds that he had represented one of the State's potential witnesses, William Edward Russell, in an unrelated matter. Furthermore, defense counsel had advised Russell's mother concerning the very incident about which he was to testify at trial, an incident involving a sexual encounter between the witness and the defendant. After a hearing in chambers, Judge William Z. Wood found as a fact, *inter alia*, that defense counsel had advised defendant of the prior representation. He therefore concluded that "Mr. Cofer's prior representation of a potential State's witness does not create a conflict of interest as a matter of law."

We note at the outset that a motion to withdraw is ordinarily a matter left to the sound discretion of the trial judge and his ruling will not be disturbed absent a showing of abuse. *Jacobs v. Pendel*, 98 N.J. Super. 252, 236 A. 2d 888 (1967).

We do not reach the question of whether the denial of the motion to withdraw constituted an abuse of discretion, since defendant has failed to demonstrate that the ruling resulted in prejudice to him. This assignment is overruled.

Defendant next assigns as error the denial of his motion to suppress a written statement made by him to investigating officers. Defendant essentially makes two arguments in support of his assertion of error. First, defendant contends that he was subjected to further questioning after he had invoked his right to counsel, in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). Second, he contends that his statement was induced by suggestions of hope or fear growing out of a statement made to him by one of the officers to "be sure and tell your attorney that you had the opportunity to help yourself and didn't." In support of the second contention, defendant relies upon our case of *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975).

After conducting a *voir dire* hearing as to the admissibility of defendant's confession, the trial judge found facts which may be summarized as follows:

Defendant was taken into custody on 5 August. 1982 and arrested in connection with another incident. At that time he was

read his rights and indicated he understood them. Sometime after noon on 6 August 1982, Detective Randy Weavil and Officer J. I. Dalton went to the Forsyth County jail, and escorted defendant to City Hall. After advising defendant of his rights, both orally and in writing, the officers proceeded to question defendant in very general terms, informing him in the process that he was being investigated in connection with another case involving a sexual assault on a minor. When the discussion turned to the particulars of the Marc Pruitt case, defendant indicated that he did not want to talk further and that he wanted an attorney. Questioning ceased and the officers transported defendant to the office of the Clerk of Superior Court. While defendant waited nearby, the officers proceeded to obtain a warrant from the Clerk. As Officer Dalton filled out the arrest warrant, he said to defendant, "Be sure to tell your attorney that you had the opportunity to help yourself and didn't." Approximately five minutes later, defendant asked Officer Dalton if he still wanted a statement, to which the officer replied that it was "up to him," and they would take his statement if he wanted to make one. Defendant indicated that he would like to make a statement. The officers escorted defendant back to City Hall, advised defendant of his rights once again, and, after defendant again waived his right to counsel, proceeded to take his statement. The entire process from the officers' initial questioning to the giving of the statement lasted slightly more than an hour.

The trial court specifically found that at the time of questioning, "the officers observed no odor of alcohol about the person of the defendant, nor did they observe or perceive any noticeable impairment either of the mental or physical faculties of the defendant from any source." The court also found that the confession was not induced by Officer Dalton's statement to defendant and that the confession was not made in response to any questioning by the officers. The court concluded that the "statement made by the defendant to Officer Dalton on 6 August 1982 was made freely, voluntarily, and understandingly."

The findings of fact by the trial court are binding upon us if supported by competent evidence in the record. *State v. Johnson,* 304 N.C. 680, 285 S.E. 2d 792 (1982). In the instant case, the pertinent findings are supported by ample evidence and we are therefore bound by them. The court's conclusions of law, however, do

not bind this Court and we may fully review them to determine if they are supported by the finding of facts. *State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984).

[3]  Defendant first argues that his confession should have been excluded under the rule of *Edwards v. Arizona*, 451 U.S. 477 (1981), that "once a suspected criminal invokes his right to counsel, he may not be questioned further until counsel is provided unless the suspected criminal himself initiates the dialogue at which time he may waive his right to have an attorney present." *State v. Franklin*, 308 N.C. 682, 686, 304 S.E. 2d 579, 582 (1983). The question presented on the facts before us, then, is whether or not defendant's confession was the result of questioning or conversation initiated by the officers after defendant had invoked his right to have counsel present, or whether defendant himself voluntarily initiated the dialogue leading to his confession. *Edwards v. Arizona*, 451 U.S. 477 (1981); *State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983); *State v. Franklin*, 308 N.C. 682, 304 S.E. 2d 579. The trial court found as a fact in this case that Officer Dalton remarked to the defendant that he should be sure and tell his attorney he had a chance to help himself and did not do so. Such a remark, however, did not amount to interrogation of defendant. Furthermore, five minutes passed before defendant "inquired of the officers as to whether they still wanted him to make a statement." Officer Dalton replied that it was up to defendant, and defendant stated he would like to give one. The trial court found that the defendant made this inquiry "of his own volition and not in response to any question asked by officers." We agree, and hold that under the circumstances surrounding the giving of defendant's statement, no violation of defendant's Sixth Amendment right to counsel occurred.

We have recognized that "interrogation is not limited to express questioning by the police," *State v. Ladd*, 308 N.C. 272, 280, 302 S.E. 2d 164, 170 (1983), and that the term also refers to " 'any words or actions on the part of the police . . . *that the police should know are reasonably likely to elicit an incriminating response from the suspect.*' " *Id.* at 281, 302 S.E. 2d at 170 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) and defining "interrogation" under *Miranda*) (emphasis supplied by the *Ladd* Court). Under the circumstances of this case, however, we are unable to conclude that Officer Dalton should have known that his "off-

hand" remark was reasonably likely to provoke defendant into making an incriminating statement. See *State v. Ladd,* 308 N.C. at 281, 302 S.E. 2d at 170 (1983). We therefore hold that defendant's confession was not made in response to interrogation by Officer Dalton, and the "prophylactic rule" of *Edwards v. Arizona* has not been violated. See *State v. Lang,* 309 N.C. 512, 308 S.E. 2d 317 (1983).

[4] Defendant argues as a second ground for this assignment that the confession was involuntary under our rule set forth in *State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975). Defendant contends that his statement was not freely and voluntarily made, but was induced by the suggestion of hope or fear implanted in his mind by Officer Dalton's statement to him.

In *Pruitt,* we held that the defendant's statement was rendered involuntary when induced by an officer's statement that it would be harder on the defendant if he did not cooperate. *Id.* However, as we noted in our recent case of *State v. Corley,* "we specifically pointed out that the statement by the officer that it would be harder on the defendant if he did not cooperate was preceded by other circumstances which tended to provoke fright in the defendant and overbear his will." *Id.* at 47, 311 S.E. 2d at 544-45. In *Corley,* we rejected the notion that *Pruitt* stands for any *per se* rule of exclusion. A majority of the Court in *Corley,* speaking through Justice Mitchell, stated:

> An absolute rule requiring exclusion of statements to law enforcement officers by a defendant in custody and who did not assert his right to counsel has been applied only in those cases in which the officers failed to comply with procedural safeguards required by *Miranda.* In cases in which the requirements of *Miranda* have been met and the defendant has not asserted the right to have counsel present during questioning, no single circumstance may be viewed in isolation as rendering a confession the product of improperly induced hope or fear and, therefore, involuntary. In those cases the court must proceed to determine whether the statement made by the defendant was *in fact* voluntarily and understandingly made, which is the ultimate test of the admissibility of a confession. In determining whether a defendant's statement was in fact voluntarily and understandingly made,

State v. Thomas

the court must consider the *totality of the circumstances* of the case and may not rely upon any one circumstance standing alone and in isolation.

*Id.* at 48, 311 S.E. 2d at 545. (Emphasis in original.)

Applying the "totality of the circumstances" test to the facts before us, we cannot say that the circumstances leading up to and surrounding defendant's confession were such as to overbear his will. In *Pruitt,* unlike the case before us, the police "repeatedly told defendant that they knew that he had committed the crime and that his story had too many holes in it; that he was 'lying' and that they did not want to 'fool around.'" *State v. Pruitt,* 286 N.C. at 458, 212 S.E. 2d at 102. In addition, the officers told defendant in that case that "it would simply be harder on him if he didn't go ahead and cooperate." *Id.* In the instant case, none of the findings supports a claim that the officers threatened defendant or otherwise attempted to frighten or coerce him into confession. All there is in this case is the sole, offhand statement of an officer, which is at best ambiguous. We therefore conclude that the trial court did not err in finding defendant's statement to be voluntary and admissible. This assignment is overruled.

Defendant's remaining assignments are either repetitious, cumulative, or are conceded by him and it is therefore not necessary to address them.

Defendant received a fair trial, free from prejudicial error.

No error.

Justice EXUM dissenting.

In holding that evidence regarding the Makas incident is admissible, the majority applies an exception to the general rule that evidence of other criminal acts is inadmissible. Specifically, the majority relies upon the exception which allows the use of "other crimes" evidence to help establish defendant's identity through a common *modus operandi* in both incidents. The majority properly states this exception but, in my view, misapplies it on the facts before us.

The majority refers to a number of similarities between the two incidents, including the time when each attack occurred, that

---

State v. Thomas

---

the perpetrator in each incident was a "jogger," that both attacks occurred in a grassy area, and that the perpetrator made similar statements to both victims. A closer review of the record dispels the first two of these alleged similarities, and the remaining ones do not support admission of the evidence.

The majority describes the time of both attacks as being similar since they took place during "non-daylight hours." Actually the incident involving Makas occurred at approximately 11:15 p.m. The incident involving Pruitt occurred between 5:30 and 5:45 a.m. Pruitt testified that it was beginning to get light when defendant attacked him. I conclude the two attacks did not occur at similar times.

The majority also relies upon each victim's identification of the perpetrator as a "jogger." Pruitt testified that he first saw defendant when defendant came jogging up the street. Pruitt stated defendant was wearing a T-shirt and cut-off shorts and had a towel around his neck, which defendant used to wipe his forehead as he stopped near Pruitt. Pruitt's testimony clearly identifies the person who attacked him as having been jogging immediately before the attack.

On the other hand, Makas testified that as he was walking along the street toward a convenience store, defendant drove past him in a van. Makas indicated defendant's van passed him three or four times. When Makas approached the convenience store, he noticed defendant sitting in the van in the parking lot. After Makas left the convenience store and began walking back down the road, he heard defendant "jogging" up behind him. When defendant came alongside Makas, they began to walk together along the street. Although Makas used the word "jogging" in describing how he heard defendant approach him, his testimony suggests that defendant merely *ran* from the van at the convenience store in an effort to catch up with Makas, rather than that defendant was actually jogging at the time. Makas did not indicate how defendant was dressed. Officer Hogan, who apprehended defendant shortly after the incident involving Makas, testified that he did not remember how defendant was clothed that night. It seems reasonable to believe that had defendant been dressed for jogging at almost midnight, Officer Hogan might have had a clearer recollection of how he was clothed.

The majority's conclusion that the perpetrator of each incident was a jogger rests, I believe, on unwarranted and unjustifiable extrapolations from the testimony offered below.

Finally, the majority suggests that there were similarities in the place where the two attacks occurred and in the statements made by the perpetrator to each victim. The majority notes that each attack took place in a grassy area. This "similarity" essentially boils down to a recognition that both attacks occurred outside. This fact adds nothing unique to the attacks which suggests that the perpetrator of one is likely to be the perpetrator of the other. Quite simply, the fact that each perpetrator placed his victim in the grass as opposed to the sidewalk or street adds little, if any, support to the contention that the same person committed both offenses.

Likewise, the fact that both victims were told to be quiet and that they would not be hurt does not establish a unique, or even unusual, pattern, or *modus operandi*, of a sex offender. Victims are frequently given such orders both to prevent the perpetrator's detection and to encourage their submission.

The majority, I fear, strains at the facts to make these two incidents seem similar, when the incidents actually are quite dissimilar. Makas described the attack on him as "violent." He said defendant "grabbed him," they struggled and defendant tried to pull his pants down. Makas said, "Let me go," several times and defendant said, "All right. You go this way and I'll go that way." Pruitt, on the other hand, indicated that defendant was not violent toward him, but merely placed a towel around his mouth and carried him to the place where he was sexually abused. I recognize that Pruitt was younger and smaller than Makas. But these facts together with the manner of the assailant's approach and nature of his attacks nevertheless emphasize the dissimilarities, rather than the similarities, of the two incidents.

In short, the two incidents were not sufficiently similar to allow introduction of the evidence of the second incident to identify defendant, by a common *modus operandi*, as the perpetrator of the other incident. Unless the similarities are more striking than they are here, one incident has no probative value on the issue of the perpetrator's identity in the other incident. I believe admission of the Makas incident was error requiring a new trial.

I also dissent from the majority's determination that defendant's confession was admissible.

After defendant had asserted his right to silence and his right to counsel, the officers took defendant to the clerk's office where they proceeded to obtain an arrest warrant. During this procedure Officer Dalton said to defendant, "Be sure to tell your attorney that you had the opportunity to help yourself and didn't." Approximately five minutes later, after a brief exchange between defendant and Officer Dalton, defendant indicated that he would make a statement. His confession followed. Defendant's confession was clearly on this record the product of Officer Dalton's statement. There is nothing in the record to indicate that it could have been the product of anything else.

When a confession follows a promise of leniency, the confession is inadmissible unless it can be shown that the influence of the promise had been entirely dissipated so that the promise did not in fact induce the confession. "[I]f promises or threats have been used, it must be made to appear that their influence has been entirely done away with before subsequent confessions can be deemed voluntary, and therefore admissible." *State v. Drake*, 113 N.C. 625, 628, 18 S.E. 166, 167 (1893) (confession made within hours after arresting officer told defendant it might be easier on him if he made an honest confession; held, confession inadmissible). "A promise of leniency renders a confession involuntary only if the confession is so connected with the inducement as to be the consequence of it." *State v. Pressley*, 266 N.C. 663, 666, 147 S.E. 2d 33, 35 (1966). But "confessions induced by . . . [a] promise of reward are inadmissible." *State v. Richardson*, 295 N.C. 309, 326, 245 S.E. 2d 754, 765 (1978).

Where there is evidence in the case that the influence of a promise of leniency has been dissipated, or "entirely done away with," before the confession was made, then the question of whether the confession was a product of the promise is resolved by considering the "totality of circumstances." *State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984) (eighteen hours elapsed between promise of leniency and confession; held, confession not induced by promise); *State v. Chamberlain*, 307 N.C. 130, 146, 297 S.E. 2d 540, 550 (1982) (promise made one day; confession given the following day; held, connection between promise and confes-

sion was "so attenuated" that promise did not render confession involuntary).

In the case at bar, defendant's willingness to confess followed Officer Dalton's statement by approximately five minutes. Nothing was shown to have intervened between Dalton's statement and defendant's confession. Until Dalton's statement was made, defendant had insisted on his right to silence and his right to counsel. There is nothing in the case to indicate that the influence of Dalton's statement had been dissipated or "entirely done away with" before defendant's confession was made. As a matter of law defendant's confession was the product of Dalton's statement. No issue arises in this case as to the causal relationship between the statement and the confession. There is no occasion for the application of the "totality of circumstances" approach used in *Corley* and *Chamberlain.*

Defendant's confession being the product of Officer Dalton's statement, the confession is inadmissible if Officer Dalton's statement constitutes an implied promise of leniency. The majority opinion does not make it clear whether Dalton's statement is indeed an implied promise of leniency. It refers to it as an "offhand statement . . . which is at best ambiguous." If, of course, the statement is not an implied promise of leniency, then the result reached by the majority on the voluntariness issue is correct.

Because of the remaining analysis of the voluntariness issue contained in the majority opinion, the majority seems to assume that Dalton's statement is an implied promise of leniency. I agree that the statement is an implied promise that if defendant cooperated with officers and made a statement to them, he would be "helped." I do not see anything else to which Dalton could have had reference when he mentioned defendant's "opportunity to help" himself.

We have, therefore, an implied promise of leniency followed within approximately five minutes by defendant's willingness to make a statement which was in turn followed by defendant's confession. Under rules heretofore consistently followed by the Court, the confession must be considered a product of the promise and, therefore, inadmissible as being involuntary.

Believing that the confession was the product of Officer Dalton's statement as a matter of law, I also think this statement

initiated the subsequent dialogue with defendant so that the confession is inadmissible under *Edwards v. Arizona*, 451 U.S. 477 (1981).