State v. Richardson

STATE OF NORTH CAROLINA v. FLOYD EDWARD RICHARDSON

No. 8328SC1134

(Filed 2 October 1984)

**Criminal Law § 75.2— confession—statements by Tennessee authorities**

Defendant's confession to North Carolina authorities should not have been admitted when the uncontroverted evidence was that the confession was induced by the choice, presented by Tennessee authorities, of facing prosecution under the Tennessee habitual criminal statute and a life sentence, or of cooperating with authorities from other states, including North Carolina, and receiving "consideration" which could include probation in Tennessee.

Chief Judge VAUGHN dissenting.

APPEAL by defendant from *Howell, Judge.* Judgment entered 9 February 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 17 September 1984.

Defendant was convicted of felonious breaking or entering, felonious larceny, attempted safecracking and safecracking. He appeals from judgments sentencing him to fifty years in prison.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Nora Henry Hargrove for defendant appellant.*

WHICHARD, Judge.

Defendant contends the court erred in denying his motion to suppress his confession. We agree, and accordingly award a new trial.

The *voir dire* hearing on the motion to suppress established without contradiction that the confession was made under the following circumstances:

In late September 1981, defendant was arrested in Tennessee on charges of attempted burglary and possession of burglary tools. He was released on bond and returned to his home in Kentucky.

Defendant appeared at a preliminary hearing in Tennessee in mid-October 1981. At that hearing Tennessee authorities threatened to prosecute him under the Tennessee habitual criminal statute if he did not cooperate, and offered him "consideration," help, and the possibility of a probationary sentence if he did cooperate. The "cooperation" requested consisted of talking with authorities from other states about crimes defendant had committed in those states.

Pursuant to defendant's agreement to cooperate, Lieutenant McCoy of the Hendersonville, Tennessee, Police Department arranged for law enforcement officials from several states, including North Carolina, to question defendant. On 5 November 1981 defendant presented himself to McCoy, who drove him in a police car to a local restaurant. There, in a back room, ten or twelve law enforcement officials questioned defendant, one at a time, about various crimes. Defendant thereupon made the confession which was the subject of his motion to suppress at trial. He testified that he confessed to Asheville police detectives only because Tennessee authorities had threatened him with prosecution as a habitual criminal, which possibly meant life in prison, if he did not cooperate with North Carolina authorities. He also stated that Lieutenant McCoy offered him "possibly a probated sentence" if he cooperated. He in fact received a probationary judgment in Tennessee.

Lieutenant McCoy of Tennessee testified that he, Assistant District Attorney Dee Gay, and a third person spoke to defendant

following the preliminary hearing in Tennessee. During that conversation it was mentioned to defendant that he could be prosecuted as a habitual criminal, but that any cooperation he showed would be taken into consideration with regard to the charges pending in Tennessee. McCoy did not remember who first mentioned this to defendant or whether it was said to defendant collectively or individually. McCoy additionally told defendant he would testify in other states in defendant's behalf concerning such cooperation.

Gay, the Tennessee Assistant District Attorney, testified that he told defendant he had no control over other jurisdictions and that defendant would be prosecuted for crimes committed in those jurisdictions. He also told defendant, however, that his office would "take . . . into consideration" defendant's cooperation with Detective McCoy about crimes committed in other jurisdictions.

Based on the foregoing *voir dire* testimony, the court found that the North Carolina officers who took defendant's statement did not threaten or coerce him and did not offer hope of reward or inducement. With respect to coercion and hope of reward on the part of Tennessee authorities, the court found:

> That some statements had been made with respect to charges pending against him in the State of Tennessee, but the Defendant had been advised that the authorities in the State of Tennessee had no control over what actions would be taken by the State of North Carolina; and in fact, the Defendant was told prior to his statement that the District [A]ttorney in North Carolina would prosecute him.

The court concluded that defendant made his confession voluntarily and denied the motion to suppress.

Incriminating statements obtained by the influence of hope or fear long have been held involuntary and thus inadmissible. *See State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975); *State v. Roberts*, 12 N.C. 259 (1827) ("a confession obtained by the slightest emotions of hope or fear ought to be rejected."). The Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 23, of the North Carolina Constitution prohibit criminal convictions based on involuntary confessions.

Our Supreme Court recently enunciated the test for determining the voluntariness of an incriminating statement:

> In cases in which the requirements of *Miranda* have been met and the defendant has not asserted the right to have counsel present during questioning, no single circumstance may be viewed in isolation as rendering a confession the product of improperly induced hope or fear and, therefore, involuntary. In those cases the court must proceed to determine whether the statement made by the defendant was *in fact* voluntarily and understandingly made, which is the ultimate test of the admissibility of a confession. In determining whether a defendant's statement was in fact voluntarily and understandingly made, the court must consider the *totality of the circumstances* of the case and may not rely upon any one circumstance standing alone and in isolation.

*State v. Corley*, 310 N.C. 40, 48, 311 S.E. 2d 540, 545 (1984) (emphasis in original).

The totality of the circumstances here indicates that defendant's confession was induced by both threats and hopes conveyed to him by Tennessee law enforcement officials. Uncontradicted testimony from defendant and from Tennessee authorities revealed that defendant was given the choice, after his arrest in Tennessee, of (1) exercising his right to silence and facing possible, if not probable, prosecution under a habitual criminal statute which could lead to life in prison, or (2) cooperating with officers from other states, including North Carolina, and receiving "consideration" and help from Tennessee authorities. Defendant was released under bond and subsequently returned to Tennessee to make statements to officers from several states. Tennessee officers drove him in a police car to the interrogation location, and the questioning proceeded behind closed doors with ten or twelve officers surrounding defendant. While the Asheville detectives carefully respected defendant's constitutional rights, they recognized that his confession to them was prompted by the hope that it would help him in Tennessee.

The court concluded that the confession was voluntary because there was no coercion or offer of help from North Carolina authorities. Its findings, however, do not address the uncontradicted evidence that Tennessee authorities pressured defend-

ant into making his statement. "If *all* the evidence tends to show that investigators made promises or threats to a suspect whose confession is the product of hope or fear generated by such promises or threats, the confession will be ruled involuntary as a matter of law." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E. 2d 540, 548 (1982) (emphasis in original). *See also State v. Fuqua*, 269 N.C. 223, 152 S.E. 2d 68 (1967) (ordering a new trial where police conduct rendered confession involuntary as a matter of law "since there was no conflict in the pertinent testimony offered on *voir dire*").

We are cognizant of the statement in *Pruitt, supra*, 286 N.C. at 458, 212 S.E. 2d at 102, that "any improper inducement generating hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage." Collateral advantage or boon, however, has been defined to mean, "for instance [,] a promise to give the prisoner some spirits [,] or to strike off his handcuffs [,] or to let him see his wife." *State v. Booker*, 306 N.C. 302, 308, 293 S.E. 2d 78, 82 (1982) (quoting *State v. Hardee*, 83 N.C. 619, 623 (1880), which in turn quotes "1 Taylor Ev., Sec. 802"). Confessions given as a consequence of such inducements need not be excluded. The inducements here, however, related to other criminal charges and are altogether different from the above examples. Further, as Dean Brandis has noted, "[w]hile [the statement in *Pruitt*] is less debatable if confined to the examples given, surely *any* inducement, however 'collateral,' is sufficient to require exclusion if the circumstances indicate a serious possibility that it could trigger a false confession." 2 H. Brandis, North Carolina Evidence Sec. 184 (1982). *See State v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620 (1965), in which defendant's confession, induced by the implied threat that he would also be charged with kidnapping, another and more serious crime which, like that of habitual criminal here, involves a potential life sentence, was held inadmissible; *State v. Smith*, 8 N.C. App. 442, 174 S.E. 2d 676, *cert. denied*, 277 N.C. 116 (1970), in which a confession to armed robbery to escape a marijuana charge was held inadmissible.

The facts of the cases cited in support of the statement in *Pruitt*, moreover, bear no relation whatever to those here. In the first of those cases, *State v. Hardee*, 83 N.C. 619 (1880), a young woman promised to marry defendant if he would tell her about

the burning of a gin house. Defendant thereupon confessed that he and another committed the burning. No objection was offered to the admission of the confession. *Id.* at 620. Further testimony, admitted over objection, indicated that upon seeing the young woman appear at a preliminary hearing on the charge, defendant had stated: "Lord, that girl is coming here against me." *Id.* This statement, however, was entirely spontaneous; it clearly was not induced by threats or hope of reward.

In the second case, *State v. Pressley*, 266 N.C. 663, 147 S.E. 2d 33 (1966), defendant made a statement to a Georgia sheriff implicating himself in a North Carolina larceny. The Supreme Court expressly noted a crucial distinction between that case and this one by stating: "Defendant makes no contention that his statement . . . was involuntary *or that the Georgia officer offered him any inducement to confess a crime committed outside his jurisdiction.*" *Id.* at 666, 147 S.E. 2d at 35 (emphasis supplied).

We therefore find *Hardee* and *Pressley* readily distinguishable and the above statement from *Pruitt* not dispositive. As indicated above, our Supreme Court recently established as the "ultimate test of the admissibility of a confession" whether it "was *in fact* voluntarily and understandingly made" as determined by "the *totality of the circumstances.*" *Corley, supra,* 310 N.C. at 48, 311 S.E. 2d at 545. The uncontroverted evidence here shows that defendant's statement was induced by the threat of life in prison if he did not confess and the hope of a "probated judgment" if he did. Application of the "totality of the circumstances" test to that uncontroverted evidence establishes beyond peradventure that the confession was not in fact voluntarily made. We thus hold the confession involuntary as a matter of law, *Chamberlain, supra,* and that its admission requires a new trial.[1]

New trial.

Judge JOHNSON concurs.

Chief Judge VAUGHN dissents.

---

1. Defendant presents a further issue which, in light of the majority decision to award a new trial, the opinion does not address. He contends that double jeopardy

State v. Richardson

Chief Judge VAUGHN dissenting.

I regard defendant's dealings with the court officials in the State of Tennessee as being in the nature of a plea bargain. I am confident he knew what he was doing every minute and made his decision in the cold light of reason. He was no frightened innocent who was led to talk by overreaching promises of law enforcement officials in Tennessee.

In Tennessee he could have been sentenced as a habitual criminal and possibly received a life sentence on probation. According to his testimony, in exchange for his promise to cooperate with law enforcement officers from North Carolina and other states, it was agreed that he would not be sentenced as a habitual felon but would be placed on probation. The State of Tennessee kept the bargain. He, a professional criminal who had pursued his career in several states over a long period of years, was allowed

---

considerations preclude his conviction and punishment for both breaking or entering and larceny that is felonious only because committed pursuant to a breaking or entering. This Court previously has rejected that argument. *State v. Smith*, 66 N.C. App. 570, 575-76, 312 S.E. 2d 222, 225-26, *disc. rev. denied*, 310 N.C. 747, 315 S.E. 2d 708 (1984); *see also State v. Downing*, 66 N.C. App. 686, 688, 311 S.E. 2d 702, 703 (1984).

It would seem, however, that the breaking or entering cannot properly be used both to convict defendant of a separate crime and to elevate the larceny offense from misdemeanor to felony status and that if, upon re-trial, defendant again is convicted of both breaking or entering and larceny, judgment should be entered on the larceny conviction as upon a conviction for misdemeanor larceny only. *See State v. Edmondson*, 70 N.C. App. 426, 320 S.E. 2d 315 (1984) (questioning holdings of *Smith* and *Downing*); *see also Wood v. Ross*, 434 F. 2d 297 (4th Cir. 1970) (in North Carolina case, double jeopardy where defendant tried for breaking and entering and then tried for a felony in which the breaking and entering was an indispensable element).

Four appeals before this Court during the current calendar year have presented this issue (*Edmondson, supra; Downing, supra; Smith, supra*; and the instant case). The facts in at least one other presented the issue but the briefs did not address it. The issue likely will recur until the Supreme Court resolves it.

If the State exercises its right to appeal provided by the dissent, this case apparently will present this issue to the Supreme Court for the first time on appeal rather than discretionary review. The judges of this Court do not agree upon the appropriate resolution. Cf. *Edmondson, supra*, with *Smith, supra*. Resolution by the Supreme Court thus would be propitious.

The author of the majority opinion has appended this footnote speaking for himself only and not for the other judges of this panel.

to "walk away." By his own admission at the sentencing hearing in this case he had "burglarized over a hundred banks" and was guilty of numerous other burglaries, larceny, auto theft, unlawful possession of stolen state bank currency, causing several illegal explosions and other crimes. He testified that at least one reason for his cooperation with the Tennessee authorities was that he had "decided to start living for God, and when you start living for Jesus Christ and believe in Jesus Christ, if he tells you to do something, you have to do it whether you want to or not. And I had a great desire to help society correct a lot of things that I did in the past." After he was saved in a prison in Terre Haute, Indiana, he returned to crime only briefly to raise money to help defend his daughter on a capital charge. After that was over, he went to Tennessee and "told them everything I did." He even helped the officials there make a training film for the police. He demonstrated methods he used to commit a number of different crimes with the hope that it would help the police in crime prevention.

No one contends defendant was promised any help on the North Carolina case. Indeed, he was assured by the North Carolina authorities that he would be prosecuted. Although he was probably as aware of his "rights" as the officers, before he made his statement to the North Carolina officers he was fully advised of all his constitutional rights and understandingly waived them and confessed. No one promised him anything or did anything to generate any hope that he could expect any relief on the criminal *charges to which his confession related.*

In sum, defendant was promised nothing, either by the Tennessee officials or those from North Carolina that could possibly indicate the slightest chance that a false confession to the North Carolina crimes was generated by the conduct of the officials. Instead, I believe he made a plea bargain in Tennessee under the terms of which he received a lighter sentence in exchange for, among other things, a confession to crimes committed in North Carolina. This is not coercion in the constitutional sense. I would admit the confession.