NO. COA13-607

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

    v.

RAMIL MARQUE COUNCIL

Wayne County
Nos. 10 CRS 54558-59

Appeal by Defendant from judgments entered 15 November 2012 by Judge Arnold O. Jones, II in Wayne County Superior Court. Heard in the Court of Appeals 24 October 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Robert C. Montgomery,[1] for the State.*
>
> *Marilyn G. Ozer for Defendant.*

STEPHENS, Judge.

*Evidence at Trial and Procedural History*

Defendant Ramil Marque Council appeals from the judgments entered upon his convictions for one count each of assault with a deadly weapon with intent to kill inflicting serious injury

---

[1] On 18 September 2013, the State moved to substitute Special Deputy Attorney General Robert C. Montgomery for Special Deputy Attorney General Tina A. Krasner due to her leaving her position with the Office of the Attorney General. By order entered 22 October 2013, this Court allowed that motion.

("AWDWIKISI") and attempted robbery with a dangerous weapon, and two counts of robbery with a dangerous weapon. The evidence at trial tended to show the following: On 28 August 2010, Christopher Powell, Mary Foy, and Angela Wiggins stopped at a convenience store in Mount Olive, North Carolina, to buy beer. Defendant,[2] who was standing in a group of men outside the store, offered to sell Powell some marijuana, and Powell agreed to drive Defendant to another location to complete the drug purchase. When the women came out of the store, Powell instructed Wiggins to sit in the front seat with Foy, who was driving. Powell and Defendant rode in the back seat. Shortly after the group drove away from the store, Defendant brandished a chrome revolver in Powell's face and demanded his money. When Powell replied that Defendant would have to shoot him first, Defendant put the gun to Powell's stomach and shot him. Powell then handed over his money and began screaming that he had been shot.

Upon hearing the pop of the handgun and Powell's cries, Foy slammed on the brakes. Defendant stuck the gun between the headrests of the front seats and demanded money from the women. Foy said that she did not have any money, but Wiggins gave Defendant about $30. Defendant then jumped out of the car and ran

---

[2] Defendant was seventeen years old at the time.

away from the scene.  Wiggins called 911, and Powell was taken by ambulance to a hospital where he underwent two surgical procedures and remained hospitalized for several weeks.  On 31 August 2010, while still in the hospital, Powell identified Defendant in a photographic lineup.  Foy also picked out Defendant in a photo lineup, although Wiggins was not able to do so.

In September 2010, Officer Jason Holliday of the Mt. Olive Police Department ("MOPD") arrived at the Duplin County home of Defendant's grandparents to serve a warrant for Defendant's arrest.  After being given permission to enter the home, Holliday eventually located Defendant hiding in the attic and placed him under arrest.  At some point after Defendant's arrest, MOPD Chief Ralph Schroeder advised Defendant of his *Miranda* rights in the presence of Defendant's mother.[3]  Schroeder noted on a juvenile rights form that Defendant had responded that he understood those rights and had invoked his right to counsel.  Schroeder then personally transported Defendant from Mt. Olive to Goldsboro, apparently to the magistrate's office, in a patrol car equipped with an interior camera.  Schroeder testified that he had chosen that particular car so that he could record any statements

---

[3] The record and trial transcript are unclear about exactly how and when Schroeder first came in contact with Defendant or why he decided to involve himself personally in Defendant's case.

Defendant might make on the way. Defendant and Schroeder talked during the drive. The video recording of those conversations was later divided into six five-minute clips. At trial, over Defendant's objection, the jury was shown clips 3, 4, and 5.

On 15 November 2012, the jury convicted Defendant of all charges against him, and the trial court imposed consecutive terms of 72 to 96 months for the AWDWIKISI charge, 62 to 84 months for the attempted robbery charge, and 62 to 84 months for each of the robbery charges. Defendant gave notice of appeal in open court. On 25 June 2013, Defendant filed a motion for appropriate relief ("MAR") with this Court, alleging that he received ineffective assistance of council ("IAC") at trial. That motion was referred for resolution to this panel by order dated 23 July 2013.

*Discussion*

In his direct appeal, Defendant brings forward two arguments: that the trial court erred in (1) ruling that Defendant could not cross-examine Powell about Powell's pending first-degree murder charge and (2) failing to suppress statements made by Defendant while he was being transported to jail. In his MAR, Defendant contends that his trial counsel's failure to object to the State's motion to bar mention of Powell's pending criminal charge constituted IAC. Because they are closely related, we address

Defendant's first issue on appeal and the issue raised in his MAR together. We find no prejudicial error in Defendant's trial and deny his MAR.

*I. Powell's pending criminal charge*

Defendant argues that the trial court committed plain error in ruling that Powell could not be questioned about an unrelated first-degree murder charge pending against him at the time of his testimony. Defendant also contends that his trial counsel's failure to object to the State's motion *in limine* to bar cross-examination of Powell about that charge constituted IAC. We disagree with both arguments.

After Powell was shot, he was charged with first-degree murder in another county in connection with an incident unrelated to his encounter with Defendant. During a pretrial conference, the State informed the trial court of Powell's pending charge and made an oral motion *in limine* to prevent Defendant from questioning Powell about it. Defendant did not object, and the court granted the State's motion. Defendant now argues that the court's ruling violated his constitutional rights.

It is error for a trial court to bar a defendant from cross-examining a State's witness regarding pending criminal charges, even if those charges are unrelated to those for which the

defendant faces trial. *State v. Hoffman*, 349 N.C. 167, 180, 505 S.E.2d 80, 88 (1998). Cross-examination can be used to impeach the witness by showing a possible source of bias in his testimony, to wit, that the State may have some undue power over the witness by virtue of its ability to control future decisions related to the pending charges. *Id.* at 180-81, 505 S.E.2d at 88. However, as Defendant concedes, his failure to object to the trial court's ruling requires him to establish plain error in order to obtain relief. As our Supreme Court has recently reaffirmed,

> the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, internal quotation marks, and brackets omitted).

To establish IAC,

> a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be

> established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and internal quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006). Further, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged error[] the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). Thus, for Defendant to prevail on either his claim of plain error or of IAC, he must show prejudice. This Defendant cannot do.

Here, as noted *supra*, it was error for the trial court to prohibit cross-examination of Powell regarding his pending criminal charge. *See Hoffman*, 349 N.C. at 180-81, 505 S.E.2d at 88. However, Defendant fails to show that this "error had a probable impact on the jury's finding that [D]efendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. As Defendant himself notes, Powell's credibility was impeached on several fronts at

trial. During his testimony, Powell revealed that, although he was only seventeen years old at the time Defendant shot him, he used alcohol and had stopped to have one of his companions buy alcohol on the evening of the crime. On cross-examination, Powell admitted to buying and using marijuana previously and, of course, Powell was trying to purchase marijuana from Defendant when he was shot. Defendant's counsel also extensively cross-examined Powell about inconsistencies between Powell's various pretrial statements to police officers and his trial testimony, such as whether he had ever purchased marijuana from Defendant before the evening of the crime and whether Defendant stole money from him at the time of the shooting. In sum, Powell's credibility was substantially impeached as he was shown to be an underage drinker and illegal drug user who gave inconsistent statements regarding a variety of facts connected to the shooting.

Further, we observe that Powell first identified Defendant as the man who shot him on 31 August 2010, only a few days after the crime occurred. Powell did not allegedly commit the murder for which he was later charged until 23 October 2010. Thus, the most crucial piece of Powell's testimony, his original identification of Defendant as the man who shot him, cannot have been influenced in any way by the pending charge. Even had Defendant been able to

cross-examine Powell about his pending charge, Powell's original identification of Defendant, which never varied and which was corroborated by Foy's identification of Defendant as the assailant, would have been entirely unaffected. In light of that consistent and definite identification and Foy's testimony that Defendant was the man who shot Powell and robbed her, we see no reasonable probability that the result of Defendant's trial would have been different if he had been able to cross-examine Powell about Powell's pending criminal charge. Accordingly, we overrule Defendant's first argument and deny his MAR.

*II. Defendant's post-arrest statements during transport*

Defendant next argues that the trial court erred in failing to suppress both the statements he made while being transported by Schroeder in the camera-equipped car and the video clips of those statements. Defendant contends (1) the admission of the video clips violated his right to counsel and (2) the clips were irrelevant and grossly prejudicial and thus inadmissible under our Rules of Evidence. We conclude that the trial court misapprehended the applicable law on the right-to-counsel issue in considering Defendant's motion to suppress. However, this error was harmless. Because any error in the admission of the video clips was not prejudicial to Defendant, any error in the trial court's

determination of their relevancy and prejudicial impact was also harmless.

*A. Standard of review*

> This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. If so, the trial court's conclusions of law are binding on appeal.

*State v. Veazey*, 201 N.C. App. 398, 400, 689 S.E.2d 530, 532 (2009) (citations and internal quotation marks omitted), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010). However, the trial court's conclusions of law are reviewed *de novo*. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted).

*B. Defendant's right to counsel*

"[D]uring a custodial interrogation, if the accused invokes his right to counsel, the interrogation must cease and cannot be resumed without an attorney being present . . . ." *State v. Golphin*, 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000) (citations and internal quotation marks omitted), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). To determine whether a defendant's invoked right to counsel has been waived, courts "must ask: (1) whether the [post-invocation interrogation] was police-initiated[]

and (2) whether [the defendant] knowingly and intelligently waived the right." *State v. Tucker*, 331 N.C. 12, 33, 414 S.E.2d 548, 560 (1992) (citation omitted).

Here, Defendant explicitly invoked his right to counsel after being read his *Miranda* rights and before being driven to Goldsboro by Schroeder. At trial, Defendant specifically argued that Schroeder's comments to Defendant during the drive were "an effort to subvert *Miranda*[.]" Accordingly, in ruling on Defendant's motion to suppress, the trial court was required, at a minimum, to resolve the factual issues of (1) whether Defendant reinitiated the conversation, thereby waiving his invoked right to counsel, and (2) whether that waiver was voluntary and knowing. *See id.*

As for which party reinitiated a post-invocation communication, our Supreme Court has noted that

> not every statement obtained by police from a person in custody is considered the product of interrogation. Interrogation is defined as either express questioning by law enforcement officers, or conduct on the part of law enforcement officers which constitutes the functional equivalent of express questioning. The latter is satisfied by any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. However, because the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation

can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response. Factors that are relevant to the determination of whether police should have known their conduct was likely to elicit an incriminating response include: (1) the intent of the police; (2) whether the practice is designed to elicit an incriminating response from the accused; and (3) any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion.

*State v. Fisher*, 158 N.C. App. 133, 142-43, 580 S.E.2d 405, 413 (2003), *affirmed*, 358 N.C. 215, 593 S.E.2d 583 (2004).

Here, the trial court found that "Schroeder did not ask any direct questions of the Defendant and did not question him concerning the circumstances involving the alleged robberies or alleged shootings. Any statements made during [the drive] were initiated by [] Defendant." While these findings are supported by the evidence and properly address whether Schroeder engaged in interrogation of Defendant by "express questioning[,]" the trial court made no "determination of whether [Schroeder] should have known [his] conduct was likely to elicit an incriminating response" by considering "(1) the *intent* of the police; (2) whether the practice [wa]s *designed to elicit an incriminating response* from the accused; and (3) any knowledge the police may have had concerning the *unusual susceptibility of [D]efendant to a*

*particular form of persuasion*." *Id.* (emphasis added). This failure is particularly concerning in light of evidence before the trial court that Schroeder, the city police chief, (1) chose to transport Defendant himself, (2) intentionally used a camera-equipped car in case Defendant made a statement, (3) had a prior relationship with Defendant from a youth sports team Schroeder coached, and (4) knew Defendant was only seventeen years old. These facts surely raised questions regarding the three *Fisher* issues.

As noted *supra*, in reviewing the denial of a motion to suppress, it is not our role to make factual findings, but rather, only to consider whether the trial court has engaged in the appropriate legal analysis, made findings of fact which are supported by competent evidence, and made conclusions of law supported by those findings. The trial court failed to make the necessary findings of fact under the first prong of the required analysis regarding Defendant's *Miranda* claim. Accordingly, the denial of Defendant's motion to suppress was error.

Further, even if the trial court had made the necessary findings of fact to support its conclusion that Defendant reinitiated the communication with Schroeder, the court also failed to resolve the second prong of the analysis set forth in

*Tucker*: whether Defendant knowingly and intelligently waived his invoked right to counsel. "Whether a waiver is knowingly and intelligently made depends on the specific facts of each case, including the defendant's background, experience, and conduct. Age, although not determinative, can be one of the factors considered as part of the totality of the circumstances." *State v. Quick*, __ N.C. App. __, __, 739 S.E.2d 608, 612 (2013) (citations omitted).

After watching the clips and hearing arguments from counsel, the trial court found them relevant under Rules of Evidence 401 and 403. The Court then stated, "I have to look at the more specific issue as to *whether or not it's a voluntary statement*." (Emphasis added). On the second issue, the court made the following oral findings of fact and conclusions of law:

> On Clip Two, in watching and listening, [] Defendant initiated the conversation. He wanted Chief Schroeder to take him to Main Street in Mt. Olive. Before that comment was made there had been no discussion at all going on in the car. After a brief pause [] Defendant struck up the conversation again. Then I heard on Clip Two Chief Schroeder on the radio, and then things got quiet once again, which led into Clip Three.
>
> At approximately 1 minute and 25 seconds into Clip Three [] Defendant asked Chief Schroeder for a cigarette. At approximately 2 minutes and 44 seconds into Clip Three, again initiated by [] Defendant, [] Defendant made

some comments about he might do 5 to 7. Chief Schroeder responded to the effect I can't tell you that; it depends on if the case is pled down. There were no threats, there were no promises, and it did not appear there was any deception. It does not appear any things were said in an effort to obtain a confession from [] Defendant.

Clip Four. [] Defendant continues to voluntarily talk. There's some comment made around the 1 minute mark into the video about staying or running. I don't recall there being any questions asked by Chief Schroeder. And I find that those statements, in the totality of the circumstances, were also voluntarily made by [] Defendant, giving deference to these issues I've addressed, and that I find [] Defendant was not deceived, his *Miranda* rights were honored, there were no physical threats or shows of violence by Chief Schroeder towards [] Defendant, no promises were made to obtain any statement of [] Defendant, [] Defendant was familiar with the criminal justice system by the comments that he made, and it appears his mental condition was clear. In fact, I think it was around this time, between Clips Four and Five, that there was some discussion made of [] Defendant playing football, and Chief Schroeder may have been — as I understand the conversation, coaching football, a youth league or something along those lines.

In Clip Five, around the 1 minute mark into the clip [] Defendant asked Chief Schroeder, do you think all the charges are going to stick? Chief Schroeder's response, I can't tell you that. There was a comment then made that it would be up to the attorneys and what type of evidence is presented. There was then a discussion about Shania, Rania and Tremia (all phonetic). That may be some children that [] Defendant's related to or at least has

a close relationship with. It didn't appear to me at any time during these clips [] Defendant felt at all threatened. He smoked a cigarette. He brought up things in conversation. At no time do I find Chief Schroeder brought up anything about the case. If anything, he was responding to [] Defendant, and his responses were very general in nature, without promises, without threats, without an attempt to deceive. The entire six clips last 30 minutes. Again, Clips [O]ne and Two, 5 minutes each, take that 10 minutes out; the remaining four clips last approximately 20 minutes. This was a very short period of time during which Chief Schroeder did not ask any direct questions of [] Defendant and did not question him concerning the circumstances involving the alleged robberies or alleged shootings. Any statements made during that 20 minute period of time were initiated by [] Defendant.

In light of *Wilkerson*, *Hardy*, and the totality of the circumstances, I find that [] Defendant's statements were of a voluntary nature, were not coerced, he was not deceived, his *Miranda* rights were honored. The length of the drive was no more than necessary from Mt. Olive to Goldsboro, which if you were to track it it's around about a 15 mile drive, but also involves some driving in town where the speed limit may be 20, 25 or 35 miles per hour, and I'm familiar with those roads, both in Mt. Olive and in Goldsboro. There were no physical threats or shows of violence, no promises were made to obtain any statements, [] Defendant had familiarity with the criminal justice system, and his mental condition appeared to be clear. And in light of all of these, the motion to suppress the video is denied. I find that it is relevant, that it was voluntarily made by [] Defendant and is proper for consideration by this jury in this case.

As the transcript reveals, the court misapprehended the second prong of the *Tucker* analysis:  whether Defendant knowingly and intelligently waived his previously invoked right to counsel. The court made no conclusions of law about the *knowing and intelligent nature of Defendant's waiver of his right to counsel*, but instead concluded only that Defendant's statements were *voluntary*, citing *State v. Wilkerson*, 363 N.C. 382, 683 S.E.2d 174 (2009), *cert. denied*, __ U.S. __, 176 L. Ed. 2d 734 (2010), and *State v. Hardy*, 339 N.C. 207, 451 S.E.2d 600 (1994).

"[T]he voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries." *Edwards v. Arizona*, 451 U.S. 477, 484, 68 L. Ed. 2d 378, 385-86 (1981) ("[H]owever sound the conclusion of the state courts as to the voluntariness of [the defendant's] admission may be, neither the trial court nor the [state appellate court] undertook to focus on whether [the defendant] understood his right to counsel and intelligently and knowingly relinquished it.  It is thus apparent that the decision below misunderstood the requirement for finding a valid waiver of the right to counsel, once invoked.").

In *Hardy*, the issue before our Supreme Court was whether the defendant's statements were voluntary.  The defendant had not been

arrested and had never invoked his right to counsel. 339 N.C. at 216-17, 451 S.E.2d at 605-06. While that case discusses many of the factors about which the trial court made findings, it does not discuss knowing and intelligent waiver of the right to counsel. *See Hardy*, 339 N.C. at 222, 451 S.E.2d at 608 ("If, looking to the totality of the circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, then he has willed to confess and it may be used against him; where, however, his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Factors that are considered include whether [the] defendant was in custody, whether he was deceived, whether his *Miranda* rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.") (citations, internal quotation marks, and brackets omitted).

Here, the trial court's oral findings of fact discuss the length of the drive to Goldsboro; the absence of coercion, threats or promises by Schroeder; and other factors relevant in determining

the *voluntariness* of a statement under *Hardy*.[4]   The court explicitly made conclusions of law regarding voluntariness. However, the trial court failed to make any conclusion as to the central question of whether Defendant's waiver of his invoked right to counsel was knowing and intelligent.  Like the trial court's failure to consider whether Schroeder's conduct was likely to elicit an incriminating response, this failure renders denial of Defendant's motion to suppress erroneous.  However, as discussed below, we conclude that this error was harmless beyond a reasonable doubt.  *See State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982) ("Error committed at trial infringing upon a defendant's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless the error committed was harmless beyond a reasonable doubt.  Overwhelming evidence of guilt may render constitutional error harmless.").

---

[4] *Wilkerson* discusses both waiver of *Miranda* rights (waiver "must be (1) given voluntarily . . . , and (2) made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it"), and the voluntariness of statements by suspects ("To be admissible, a defendant's statement must be the product of an essentially free and unconstrained choice by its maker."). *Wilkerson*, 363 N.C. at 430-31, 683 S.E.2d at 203-04 (citations and internal quotation marks omitted).  However, in that case, the defendant had never invoked his right counsel and further, on appeal, contested only the *voluntariness* of his statement. *Id.* at 430, 683 S.E.2d at 203.

In the video clips shown to the jury, Defendant does not confess to the crimes for which he which was tried. He and Schroeder largely discuss unrelated matters, including snakes, convertibles, and people they both know. The only comments Defendant made which could be viewed as even possibly inculpatory were: (1) wondering whether he "might do 5 to 7" years in prison (presumably a reference to the possible consequences of his arrest), (2) an admission that he had seen and narrowly avoided police officers the night before, (3) an expression that he had intended to stay "on the run" as long as possible, and (4) a question about why police had described him as "armed and dangerous." In sum, the clips contained little relevant evidence, but Defendant's statements were not particularly prejudicial. Thus, even had the video clips been suppressed, in light of the clear and definite testimony from Powell and Foy identifying Defendant as their assailant, we conclude beyond a reasonable doubt that the outcome of Defendant's trial would have been the same.

*C. Relevance and prejudicial impact*

Defendant also contends that the trial court erred in concluding that the selected video clips were relevant and that their probative value was not substantially outweighed by their prejudicial impact. *See* N.C. Gen. Stat. § 8C-1, Rules 401, 403

(2013). "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2013). As noted *supra*, while we agree that the video clips contained relatively little relevant evidence, we also find that they contained little if any prejudicial content. Accordingly, even if the admission of the video clips was error under Rules of Evidence 401 and/or 403, we conclude that there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" *Id.* Accordingly, Defendant cannot establish prejudice which would entitle him to relief.

NO PREJUDICIAL ERROR.

Judges GEER and ERVIN concur.