DIETZ, Judge.
 

 Defendant Jonathan Santillan appeals his convictions and sentences stemming from a gang-related home invasion in which Santillan and others murdered an innocent working couple. The victims lived in a home once occupied by a rival gang member who was the intended target. Santillan was fifteen years old at the time of the crime.
 

 As explained below, the trial court's order denying Santillan's motion to suppress fails to address a key underlying fact: that a law enforcement officer communicated with Santillan between the time Santillan invoked his right to counsel and the time he agreed to waive his right to counsel. Without findings acknowledging and addressing the impact of that communication, this Court cannot meaningfully review whether Santillan's waiver of
 
 *692
 
 his right to counsel was voluntary. We therefore remand this issue to the trial court for further proceedings. We reject the remainder of Santillan's challenges to his convictions.
 

 With respect to Santillan's sentence, the State concedes that the trial court failed to make sufficient findings to support the two sentences of life without parole. We therefore vacate those sentences and remand for a new sentencing hearing for those convictions, if one is necessary after the trial court resolves the issues concerning the suppression order.
 

 Facts and Procedural History
 

 On 5 January 2013, Maria Saravia Flores and Jose Mendoza Flores were shot to death in their home during a gang-related attack. The attackers kicked in the couple's front door and sprayed every room in the home with gunfire from an AK-47 rifle and a .45 caliber handgun. Mr. Flores was shot sixteen times while lying on the couch and Ms. Flores was shot seven times in the back and legs at the doorway to the kitchen.
 

 The couple were not the intended targets of the shooting. They lived in a home previously occupied by a gang member named "Sancho." Sancho had been the target of a previous shooting by a rival gang member named "Trigger," who was accompanied by his brother, Moises, and two teenagers, Isrrael Vasquez and Defendant Jonathan Santillan.
 

 At the time of this earlier shooting, Sancho refused to provide much information to law enforcement about his attackers. But after reports of the Floreses' killings, Sancho contacted law enforcement and told them he believed he was the intended victim. He explained that he had lived at that residence a year earlier, before the Floreses moved in, and "Trigger" had visited him when he lived there. Law enforcement contacted Trigger's girlfriend, who identified Moises, Vasquez, and Santillan as Trigger's associates, and informed police that they carried a .45 caliber handgun and an AK-47 rifle.
 

 Police found Santillan and Vasquez in the attic of Vasquez's house and arrested them. After searching the attic, law enforcement also found an AK-47, a .45 caliber handgun, and several rounds of .45 caliber ammunition. The .45 caliber ammunition had scratch marks on the shell casings to obscure identifying information, and those scratch marks matched those found on casings at the Floreses' home and the earlier shooting involving Sancho.
 

 On 15 January 2013, officers interrogated Santillan in four separate interviews over an eight-hour period. At the time, Santillan was fifteen years old. Santillan initially denied his involvement in both the Sancho shooting and the Floreses' killings, but later confessed to being present at the Sancho shooting. Santillan denied any involvement in the Floreses' killings, but he gave a detailed description of the murders and made a sketch of the Floreses' home based on information he claimed to have learned from Moises. Law enforcement videotaped each of the four interviews.
 

 The State indicted Santillan on two counts of first degree murder, conspiracy to commit murder, first degree burglary, conspiracy to commit burglary, and possession of a firearm with altered serial number. At trial, the State sought to admit Santillan's videotaped interrogation and his sketch of the Floreses' home into evidence. Santillan moved to suppress this evidence on the ground that it was obtained in violation of his Sixth Amendment rights. The trial court denied the motion.
 

 Over Santillan's objection, the trial court also admitted rap lyrics found in a notebook in Santillan's room. The lyrics describe someone "kick[ing] in the door" and "spraying" bullets with an AK-47.
 

 The jury convicted Santillan on all charges. The trial court sentenced him to two consecutive sentences of life without parole and other, lesser sentences. Santillan timely appealed.
 

 Analysis
 

 I. Santillan's Motion to Suppress
 

 Santillan first challenges the denial of his motion to suppress, arguing that the trial court's order lacks key findings concerning law enforcement's communications with him after he invoked his right to counsel. As explained below, we agree that the trial
 
 *693
 
 court's order did not address key factual issues and we therefore remand for the trial court to do so.
 

 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982).
 

 "[D]uring custodial interrogation, once a suspect invokes his right to counsel, all questioning must cease until an attorney is present or the suspect initiates further communication with the police."
 
 State v. Quick
 
 ,
 
 226 N.C. App. 541
 
 , 543,
 
 739 S.E.2d 608
 
 , 610 (2013). The questioning prohibited under this rule includes "not only express questioning, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."
 
 Id.
 
 at 544,
 
 739 S.E.2d at 611
 
 .
 

 "Factors that are relevant to the determination of whether police should have known their conduct was likely to elicit an incriminating response include: (1) the intent of the police; (2) whether the practice is designed to elicit an incriminating response from the accused; and (3) any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion."
 
 State v. Fisher
 
 ,
 
 158 N.C. App. 133
 
 , 142-43,
 
 580 S.E.2d 405
 
 , 413 (2003),
 
 aff'd
 
 ,
 
 358 N.C. 215
 
 ,
 
 593 S.E.2d 583
 
 (2004).
 

 In
 
 Quick
 
 , for example, the defendant invoked his right to counsel. Later, an officer told him that the police had more warrants to serve on him, that an attorney would not be able to help with these new warrants, and that defendant would be served with the warrants regardless of whether the attorney was there or not.
 
 226 N.C. App. at 544
 
 ,
 
 739 S.E.2d at 611
 
 . The defendant then responded, "We need to talk."
 
 Id.
 
 at 542,
 
 739 S.E.2d at 610
 
 . The officer again read the defendant his
 
 Miranda
 
 rights and the defendant signed a waiver form.
 

 Id.
 

 The trial court found that the officer knew or should have known his comments would elicit an incriminating response and therefore amounted to further questioning. This Court affirmed the trial court's suppression order based on that finding.
 
 Id.
 
 at 544,
 
 739 S.E.2d at 611
 
 .
 

 By contrast, in
 
 State v. Thomas
 
 , the defendant invoked his right to counsel and the officer responded that "he should be sure and tell his attorney [that] he had a chance to help himself and did not do so."
 
 310 N.C. 369
 
 , 377,
 
 312 S.E.2d 458
 
 , 463 (1984). Five minutes later, the defendant told the officer he wanted to make a statement and agreed to waive his right to counsel.
 

 Id.
 

 Our Supreme Court affirmed the denial of the motion to suppress, holding that "we are unable to conclude that [the officer] should have known that his 'off-hand' remark was reasonably likely to provoke defendant into making an incriminating statement."
 
 Id.
 
 at 377-78,
 
 312 S.E.2d at 463
 
 .
 

 With this precedent in mind, we turn to the trial court's suppression order in this case. As noted above, our review of the denial of a motion to suppress is strictly limited to the facts found by the trial court.
 
 Cooke
 
 ,
 
 306 N.C. at 134
 
 ,
 
 291 S.E.2d at 619
 
 . In other words, "it is not our role to make factual findings, but rather, only to consider whether the trial court has engaged in the appropriate legal analysis, made findings of fact which are supported by competent evidence, and made conclusions of law supported by those findings."
 
 State v. Council
 
 ,
 
 232 N.C. App. 68
 
 , 75,
 
 753 S.E.2d 223
 
 , 229 (2014).
 

 Here, the video recording of Santillan's interrogation shows that Santillan initially waived his right to counsel and spoke to the officers. But, after lengthy questioning by law enforcement, Santillan re-invoked his right to counsel and the officers ceased their interrogation and left the room. During that initial questioning, law enforcement told Santillan they were arresting him on drug charges. The officers also told Santillan they suspected he was involved in the Floreses' killings, but they did not tell him they were charging him with those crimes, apparently leaving Santillan under the impression that he was charged only with "drug possession."
 

 *694
 
 Then, before being re-advised of his rights and signing a second waiver form, Santillan engaged in the following exchange with Chief Johnson, who was standing outside the interrogation room:
 

 SANTILLAN: Excuse me. Excuse me, sir. When can I make my phone call? When can I make my phone call?
 

 CHIEF JOHNSON: In about two hours.
 

 SANTILLAN: All right. So, what are-
 

 CHIEF JOHNSON: (
 
 Inaudible
 
 ) booked.
 

 SANTILLAN: Huh?
 

 CHIEF JOHNSON: You got to be booked.
 

 SANTILLAN: What do you mean?
 

 CHIEF JOHNSON: You've been arrested for a shooting.
 

 SANTILLAN: I had nothing to do with that.
 

 CHIEF JOHNSON: All right. You'll be told. Hold on.
 

 SANTILLAN: No, they already told me, but I already told them what I know.
 

 CHIEF JOHNSON: Son, you f***** up.
 

 SANTILLAN: I did?
 

 CHIEF JOHNSON: You did.
 

 SANTILLAN: Nah, I didn't. So, they have to get transport? They're going to get transport? They're getting transport right now?
 

 CHIEF JOHNSON: Oh, yeah.
 

 SANTILLAN: All right. Thank you.
 

 (Santillan sits back down.)
 

 SANTILLAN: Aw, f*** this. I know (
 
 inaudible
 
 ). F*** this, man. They better put me in protective custody, dog. (
 
 Inaudible
 
 ).
 

 Later, officers re-entered the interrogation room and Santillan told them that he again wanted to waive his right to counsel and make a statement.
 

 The trial court's order does not address this exchange with Chief Johnson quoted above. The court's order finds that, during the initial interview, Santillan "read and reviewed a juvenile rights waiver form" and "eventually signed the rights form" before speaking to the officers. The court's findings do not expressly acknowledge that Santillan later invoked his right to counsel, at which point the officer ceased questioning him and left the room. But that finding can be inferred from the court's next finding, which notes that "[a]pproximately 40 minutes later, [Santillan] knocked on the door of the interview room and asked to speak with the investigators again. Investigator Scott Barefoot returned to the room with Chief Richard Johnson ... and they explained that they cannot talk with him anymore unless he waives his rights. They then go through another juvenile rights waiver form ..., which [Santillan] also signed."
 

 These findings are insufficient for this Court to meaningfully review the trial court's legal conclusions. Because the trial court did not even address the exchange between Santillan and Chief Johnson in its findings, this Court cannot examine the relevant legal factors applicable to this exchange such as "(1) the intent of the police; (2) whether the practice is designed to elicit an incriminating response from the accused; and (3) any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion."
 
 Fisher
 
 ,
 
 158 N.C. App. at 142-43
 
 ,
 
 580 S.E.2d at 413
 
 .
 

 When a trial court's order fails to resolve fact issues necessary to assess the trial court's legal conclusions, "an appellate court may remand the cause for appropriate proceedings without ordering a new trial."
 
 State v. Lang
 
 ,
 
 309 N.C. 512
 
 , 523-24,
 
 308 S.E.2d 317
 
 , 323 (1983). We therefore remand this matter for a new suppression hearing with instructions for the trial court to address the exchange between Santillan and Chief Johnson in light of the relevant factors identified in this opinion. The trial court, based on those new findings, may again deny the motion to suppress, leaving Santillan's convictions intact, or may grant the motion to suppress in whole or in part and order a new trial.
 
 See
 

 State v. Hammonds
 
 ,
 
 370 N.C. 158
 
 , 160-62,
 
 804 S.E.2d 438
 
 , 441 (2017).
 

 Santillan also argues that, even ignoring Chief Johnson's communication with him, his second waiver was involuntary because of factors including his young age, the officers' interrogation tactics, and his lack of sleep, food, and medication.
 
 See
 

 *695
 

 State v. Martin
 
 ,
 
 228 N.C. App. 687
 
 , 691-92,
 
 746 S.E.2d 307
 
 , 311 (2013). The trial court's order addressed these factors and, based on facts supported by competent evidence in the record, the court concluded that Santillan's "actions and statements show awareness and cognitive reasoning during the entire interview" and Santillan "was not coerced into making any statements, but rather made his statements voluntarily." Because the trial court's fact findings on these issues are supported by competent evidence, and those findings in turn support the court's conclusions, we reject these other challenges to the trial court's determination of voluntariness.
 
 [1]
 

 II. Admission of the Rap Lyrics
 

 Santillan next challenges the trial court's admission of rap lyrics found in a notebook in Santillan's room. The lyrics, which were written before the Floreses were killed, described someone "kick[ing] in the door" and "spraying" bullets with an AK-47 in a manner that resembled how the Floreses were killed. Santillan argues that the rap lyrics are irrelevant, prejudicial, and improper character evidence in violation of Rules 401, 403, and 404(b) of the North Carolina Rules of Evidence.
 

 Santillan concedes that his trial counsel did not object to the admission of the rap lyrics and we therefore review the question of admissibility for plain error.
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 In other words, the defendant must "show that, absent the error, the jury probably would have returned a different verdict."
 
 Id.
 
 at 519,
 
 723 S.E.2d at 335
 
 . In addition, plain error review is inapplicable to discretionary decisions of the trial court, such as a decision to exclude evidence under Rule 403.
 
 State v. Cunningham
 
 ,
 
 188 N.C. App. 832
 
 , 836-37,
 
 656 S.E.2d 697
 
 , 700 (2008). We therefore limit our review to Santillan's challenge under Rules 401 and 404(b).
 

 Applying the plain error standard, we reject Santillan's argument because he fails to show that, absent the alleged error, the jury probably would have returned a different verdict. The jury heard testimony establishing that the Floreses were murdered with a .45 caliber handgun and an AK-47 rifle; that Trigger's girlfriend identified Santillan as someone who possessed those kinds of weapons; and that the attic where police found Santillan contained guns and casings matching those from the crime scene. Santillan also gave a statement to police from which the jury could infer his involvement in the killings.
 

 Santillan categorically asserts that the rap lyrics had "enormous prejudicial effect," but he does not explain why, had the rap lyrics not been admitted, the jury probably would have rejected the State's other evidence and found Santillan not guilty. Accordingly, we hold that Santillan has failed to satisfy his burden to establish plain error.
 
 [2]
 

 Santillan also asserts that his counsel was ineffective for failing to object to the admissibility of this evidence. We decline to address this issue on direct appeal. This Court will address the merits of an ineffective assistance of counsel claim "when the cold record reveals that no further investigation is required."
 

 *696
 

 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 122-23,
 
 604 S.E.2d 850
 
 , 881 (2004). Where the claim raises "potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues."
 
 State v. Stroud
 
 ,
 
 147 N.C. App. 549
 
 , 556,
 
 557 S.E.2d 544
 
 , 548 (2001). Our Supreme Court recently emphasized that whether defense counsel "made a particular strategic decision remains a question of fact, and is not something which can be hypothesized" by an appellate court on direct appeal.
 
 State v. Todd
 
 ,
 
 369 N.C. 707
 
 , 712,
 
 799 S.E.2d 834
 
 , 838 (2017).
 

 Here, there is nothing in the record to indicate why Santillan's counsel chose not to object to the admission of the rap lyrics, whether there was a valid strategic reason for that decision, or whether that decision was reasonable. Accordingly, we dismiss this claim without prejudice to pursue it in a motion for appropriate relief.
 
 Thompson
 
 ,
 
 359 N.C. at 123
 
 ,
 
 604 S.E.2d at 881
 
 .
 

 III. Sentencing under N.C. Gen. Stat. §§ 15A-1340.19A -C
 

 Finally, Santillan argues that the trial court erred by imposing two consecutive sentences of life without parole without making sufficient fact findings. Specifically, Santillan argues that, although the trial court listed each of the statutory mitigating factors under N.C. Gen. Stat. § 15A-1340.19B(c), the court failed to expressly state the evidence supporting or opposing those mitigating factors as required by
 
 State v. Antone
 
 ,
 
 240 N.C. App. 408
 
 , 412,
 
 770 S.E.2d 128
 
 , 130-31 (2015), and
 
 State v. James
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 73
 
 , 83-84 (2016). On appeal, the State concedes that the trial court erred by failing to make these findings.
 

 We agree with the parties that the trial court's findings are insufficient under
 
 Antone
 
 and
 
 James
 
 . We therefore vacate Santillan's two sentences of life without parole and remand for a new sentencing hearing.
 

 Santillan also challenges the constitutionality of N.C. Gen. Stat. § 15A-1340.19A
 
 et seq.
 
 , both facially and as applied to him. Because we vacate his two life sentences for insufficient factual findings, we need not address Santillan's as-applied challenge, which may be mooted based on the trial court's new findings or the new sentences imposed. Santillan's facial challenge is precluded by this Court's holding in
 
 James
 
 , but we acknowledge that it is preserved for further review in our Supreme Court if necessary. --- N.C. App. at ----,
 
 786 S.E.2d at 84
 
 .
 

 Conclusion
 

 In sum, we remand the trial court's order denying Santillan's motion to suppress for additional proceedings consistent with this opinion. We find no plain error with respect to Santillan's evidentiary challenges and we dismiss Santillan's corresponding ineffective assistance of counsel claim without prejudice to pursue that issue in a motion for appropriate relief. We vacate Santillan's two sentences of life without parole and remand for a new sentencing hearing with respect to those convictions, should that sentencing hearing be necessary following resolution of the remanded motion to suppress.
 

 REMANDED IN PART; NO PLAIN ERROR IN PART; DISMISSED IN PART; VACATED AND REMANDED IN PART.
 

 Judges ELMORE and INMAN concur.
 

 [1]
 

 We recognize that some of these findings are relevant to assessing whether Chief Johnson's statements to Santillan were likely to elicit an incriminating response. The trial court may, but need not, supplement these findings on remand as well.
 

 [2]
 

 Because Santillan did not object to the lyrics'
 
 admission
 
 into evidence, we have reviewed his objection for plain error. However, Santillan timely objected to the State's request to
 
 publish
 
 the rap lyrics to the jury after they were admitted into evidence. The trial court's decision to publish already-admitted evidence to the jury is a matter that rests within the trial court's sound discretion.
 
 State v. Harris
 
 ,
 
 315 N.C. 556
 
 , 562,
 
 340 S.E.2d 383
 
 , 387 (1986). Santillan has not shown that the court's decision to publish this admitted evidence was an abuse of discretion-that is, an act "so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 673,
 
 617 S.E.2d 1
 
 , 19 (2005).