TYSON, Judge.
Todd Dion Fletcher ("Defendant") appeals from the judgment entered upon his convictions by a jury of two counts of breaking or entering, two counts of larceny pursuant to breaking or entering, and attaining the status of an habitual felon. We dismiss the appeal without prejudice to Defendant's right to file a motion for appropriate relief in superior court based upon an allegation of ineffective assistance of counsel.
I. Background
On 4 August 2014, Defendant was indicted for two counts of felonious breaking or entering and two counts of larceny pursuant to breaking or entering in connection with break-ins that occurred at two convenience stores located in Forsyth County. Defendant was also indicted for having attained the status of an habitual felon. The charges related to the convenience stores were joined for trial. Defendant was tried before a jury. The evidence presented at trial tended to show the following:
A. Circle K Convenience Store
At approximately 5:18 a.m. on 30 January 2014, Winston-Salem Police Officer Shawn Moral responded to a call of a break-in at a Circle K convenience store located in Winston-Salem. A window on the left side of the front door had been shattered, and several items were present on the floor nearby, including a "good-sized rock about the size of a softball" and a pack of Newport brand cigarettes. Inside the store, the Newport cigarette pack display and the scratch-off lottery ticket display had been rummaged through. Circle K employees reported that five lottery tickets were missing, along with some packs of Newport cigarettes.
Dominque Jones, an assistant manager of the Circle K, arrived at the scene at approximately 6:00 a.m. when the store was scheduled to open. Ms. Jones reviewed the store's video surveillance footage, which showed a man entering the store through a broken window around 3:15 a.m., stealing lottery tickets and Newport cigarettes, and exiting the store less than a minute later. Ms. Jones recognized the man in the surveillance video based upon the brown coat he was wearing that had "NYC" written across the front. She recalled having a conversation with him at the Circle K about two weeks before the break-in and asking him where he bought the coat.
Based on her recollection, Ms. Jones looked back through the store's surveillance video until she found footage of her encounter on 17 January 2014 with a man wearing the same brown coat. At trial, Ms. Jones identified Defendant as the man wearing the brown coat with whom she had spoken on 17 January 2014.
Winston-Salem Police Detective Michael Ognosky was assigned to the Circle K case. He reviewed the video surveillance footage from the 30 January 2014 break-in, but was unable to develop a suspect because the perpetrator's face was covered. Detective Ognosky then reviewed the 17 January 2014 video and "immediately noticed it was the same exact jacket." Because Detective Ognosky did not recognize the perpetrator, he sent "still shots" from the 17 January 2014 footage to other officers to see if they could identify the perpetrator.
Winston-Salem Police Corporal John Renew recognized the man depicted in the 17 January 2014 still shots as Defendant, whom he had encountered around 10:40 a.m. on 30 January 2014 at a Family Dollar Store in Winston-Salem. On that day, Defendant was wearing the same jacket and toboggan hat that he was wearing in the photograph from the surveillance video sent by Detective Ognosky. Corporal Renew provided Detective Ognosky with Defendant's information. Corporal Renew identified Defendant at trial as the man wearing the brown jacket whom he encountered on 30 January 2014, the same day as the Circle K break-in. On 17 February 2014, Detective Ognosky obtained a warrant for Defendant's arrest in connection with the events that occurred at the Circle K.
B. 1 Stop Convenience Store
Joe Clark, Jr., the owner of a 1 Stop convenience store in Kernersville, was notified by the store's security company at approximately 3:00 a.m. on 25 February 2014 that a break-in had occurred, and the police had been dispatched. When Mr. Clark arrived at the store, which was closed, several police officers were already on the scene. He observed that one of the front double doors and a nearby window had been shattered, and a rock was on the floor inside the store. Cigarettes and other items from the front counter were also strewn on the floor.
Mr. Clark reviewed the store's video surveillance footage with the police. The surveillance video showed a glass window at the front of the store breaking at 2:51 a.m., and the perpetrator subsequently rummaging through the cigarette display behind the front counter. The perpetrator, who wore a hat and had a beard, took four to eight packs of Newport brand cigarettes.
Winston-Salem Police Detective Amanda Shay was assigned to the 1 Stop case. She and Detective Ognosky routinely compared their cases. Detective Shay was aware that Detective Ognosky had identified Defendant as a suspect in the Circle K break-in, and she had previously seen Defendant's image. When Detective Shay reviewed the surveillance footage from 1 Stop, she recognized Defendant as the perpetrator. Detective Shay then obtained a photograph of Defendant dated 18 January 2014 from the police department's system. She identified similarities in the shirt Defendant was wearing in the 18 January 2014 image and the shirt worn by the suspect in the video surveillance footage. She also noted similarities between Defendant's facial characteristics and beard and those of the perpetrator in the surveillance video. After comparing Defendant's 18 January 2014 image to the surveillance video, Detective Shay believed that Defendant was the perpetrator depicted in the video. On 6 March 2014, Detective Shay obtained a warrant for Defendant's arrest for the crimes that occurred at the 1 Stop convenience store.
Prior to jury selection on the first day of trial, 13 April 2015, Defendant personally addressed the trial court, stating:
I have several alibi witnesses and a witness that can prove that I was in Charlotte at the time. And after speaking to my attorney this morning, he's just informed me that he's not reached out to anyone and that it is my duty to reach out. There's a gentleman in this case that is on film with a person cashing in the alleged stolen lottery tickets that says that he can't swear to it, but he believes that I was in Charlotte. So along with that and my alibi witness that lives in Charlotte ... I can prove my innocence. But my attorney hasn't reached out to anyone. I don't even believe that he has a witness list [o]n my behalf.
Defendant's trial counsel declined the trial court's invitation to discuss the matter. The State noted Defendant did not oppose its motion to join the Circle K and 1 Stop offenses for trial, and Defendant had failed to provide notice of an alibi defense as required by a prior court order. The trial court construed Defendant's statements as a motion to continue which it denied, noting that Defendant had been aware of his trial date for several months. Defendant explained the case had been continued previously while he unsuccessfully attempted to retain private counsel and inquired whether the trial would proceed when his attorney "read the witness's statements" but "hasn't done any type of investigation ...."
The trial court stated that Defendant had ample time and opportunity to discuss any witnesses with his attorney, noted Defendant's statements for the record, and proceeded to jury selection. After the first day of the trial, Defendant did not return to the courtroom. The trial court found that Defendant had waived his right to be present and continued the trial in his absence.
On 14 April 2015, the jury found Defendant guilty of breaking or entering and larceny of the Circle K and the 1 Stop convenience stores. The next day, the jury found Defendant guilty of having attained the status of an habitual felon. Following the return of the habitual felon verdict, the trial court continued prayer for judgment and issued orders for Defendant's arrest. Defendant was served with the order for his arrest in April 2017.
Defendant was sentenced on 2 May 2017. The trial court consolidated the convictions for judgment and imposed 84 to 113 months of imprisonment. Defendant appeals.
II. Jurisdiction
An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Issue
Defendant's sole argument on appeal is that he was "potentially" deprived of effective assistance of counsel at his trial.
IV. Analysis
Defendant argues the record suggests that his trial counsel failed to reasonably investigate his alibi witnesses. Defendant also maintains the factual record "is not sufficiently developed to present for appellate review on the merits." Defendant requests this Court "dismiss the issue without prejudice to his right to raise an ineffective assistance of counsel claim in a motion for appropriate relief" in the trial court.
To prevail on a claim of ineffective assistance of counsel, a defendant must make two showings:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting Strickland v. Washington , 466 U.S. 668, 687, 80 L.Ed. 2d 674, 693 (1984) ).
When analyzing the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland , 466 U.S. at 689, 80 L.Ed. 2d at 694-95 (internal quotation marks omitted). However,
strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Id. at 690-91, 80 L.Ed. 2d at 695 ; see also Braswell , 312 N.C. at 562-63, 324 S.E.2d at 248 ("[W]e expressly adopt the test set out in Strickland v. Washington as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution.").
"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." State v. Stroud, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), cert. denied , 356 N.C. 623, 575 S.E.2d 758 (2002). Such claims will only be decided on direct appeal if "the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Thompson , 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (internal quotation marks omitted), cert. denied , 546 U.S. 830, 163 L.Ed. 2d 80 (2005).
Where a claim raises "potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues." Stroud , 147 N.C. App. at 556, 557 S.E.2d at 548. "Our Supreme Court recently emphasized that whether defense counsel 'made a particular strategic decision remains a question of fact, and is not something which can be hypothesized' by an appellate court on direct appeal." State v. Santillan , --- N.C. App. ----, ----, 815 S.E.2d 690, 696 (2018) (quoting State v. Todd , 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017) ).
V. Conclusion
We agree with Defendant that further investigation is appropriate to determine whether Defendant's trial counsel conducted a reasonable investigation into Defendant's asserted alibi witnesses under the circumstances, or made a reasonable decision not to do so. The record indicates that the identity of the perpetrator of both incidents was Defendant's main defense at trial. Defendant's trial counsel sought a specific jury instruction on eyewitness identification, which was denied by the trial court. The record does not reveal "all the circumstances known to counsel at the time of representation." State v. Buckner, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000).
There is also an absence of information related to the communications between Defendant and his counsel leading up to trial. Without such information, we are unable to evaluate whether trial counsel's failure to conduct any further investigation into Defendant's asserted alibi witnesses was the result of a valid strategic decision, or whether that decision was unreasonable. We dismiss this appeal without prejudice to Defendant's right to file a motion for appropriate relief in superior court. See Thompson , 359 N.C. at 123, 604 S.E.2d at 881. It is so ordered .
DISMISSED WITHOUT PREJUDICE.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.